**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:13-cv-60536-RNS**

VANESSA LOMBARDO,

Plaintiff,

v.

JOHNSON & JOHNSON
CONSUMER COMPANIES, INC. and
NEUTROGENA CORPORATION,

Defendants.

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff, VANESSA LOMBARDO, on behalf of herself and all others similarly situated, sues Defendants, JOHNSON & JOHNSON CONSUMER COMPANIES, INC., and NEUTROGENA CORPORATION, and states the following:

**NATURE OF ACTION**

1. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of herself and a Class consisting of all Florida residents who purchased, between 2009 and the present, certain Aveeno sun protection products from Defendant Johnson & Johnson Consumer Companies, Inc. ("J&J") and certain Neutrogena sun protection products from Defendant Neutrogena Corporation ("Neutrogena Corp.") that (i) bear an "SPF" designation between 55 and 85 (ii) were labeled or advertised to provide "sunblock," "waterproof," "sweatproof" or "continuous" sun protection, and (iii) include deceptive and misleading representations that higher SPF values provide greater sunburn protection.

2. J&J manufacturers, markets and distributes the Aveeno Active Naturals sun protection product line. Neutrogena Corp. manufacturers, markets and distributes the Neutrogena sun protection product line. As alleged herein, J&J and Neutrogena Corp. engaged in unconscionable business practices and deceptive acts in connection with the labeling, advertising, marketing and sale of certain sun protection products in Florida, which has harmed and is continuing to harm Plaintiff and the Class. J&J and Neutrogena Corp. are collectively referred to herein as "Defendants."

3. During the Class Period, Defendants engaged in a common plan and scheme through the use of deceptive and misleading labeling and advertising claims on the Aveeno and Neutrogena Sun Protection Products to induce consumers to purchase their products based on the purported benefits provided, including, but not limited to, the level of Sun Protection Factor ("SPF"). In addition, through their deceptive and misleading product labels and advertising, Defendants have led consumers to believe that the Aveeno and Neutrogena Sun Protection Products provide "sunblock," "waterproof," "sweatproof" or "continuous" protection from the sun's harmful rays, when Defendants knew, or should have known, that these claims were and are deceptive and misleading.[1] In fact, the FDA has identified the terms ''sunblock'' ''waterproof,'' and ''sweatproof'' as "false and misleading." *See* 21 C.F.R. §201.327(g) and 76 Fed. Reg. 35620, 35643.[2] Through their deceptive and misleading product labels and advertising, Defendants have also led consumers to believe that higher SPF values provide greater sunburn protection when Defendants knew, or should have known, that these claims, without qualification, are false and misleading.

---

[1] As described herein, only the Aveeno Sun Protection Product line includes claims of "continuous protection," and only the Neutrogena Sun Product line includes claims of "sweatproof" protection.

[2] The FDA has also indicated the terms "sunblock," "waterproof" and "sweatproof" are "essentially exaggerations of performance that FDA does not think can be substantiated. 76 Fed. Reg. 35620, 35643.

***The Aveeno Sun Protection Products***

4. J&J distributes, markets and sells various over-the-counter sun protection products throughout Florida. As alleged herein, J&J engaged in unconscionable, unfair and deceptive acts or practices in connection with the labeling, advertising, marketing and sale of their Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 70 and Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 85 products in Florida (collectively referred to herein as "Aveeno Sun Protection Products"), which have harmed Plaintiff and the Class.[3]

5. J&J has deceptively advertised, marketed and represented to consumers that the Aveeno Sun Protection Products with SPF values of 70 and 85 provide additional clinical benefits than its Aveeno Sun Protection products with SPF values of 55. J&J has charged a premium for its SPF 70 and 85 products when, as J&J knew or should have known, the protection provided by these products provided no additional clinical benefit than comparable products, including its lower priced sun protection products with SPF values of 55.[4] Further, on the Aveeno sun protection products, J&J has deceptively represented, without qualification, that "higher SPF gives more sunburn protection" when, as J&J knew or should have known, products with SPF values over 50 do not provide any increase in clinical benefit over SPF 50 sunscreen products.

6. In addition, J&J has deceptively advertised, marketed and represented that the Aveeno Sun Protection Products provide "sunblock" protection from the sun's harmful rays

[3] Plaintiff's claims, on behalf of herself and all others similarly situated, against J&J relate only to Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 70 and Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 85 products that she purchased.

[4] Aveeno sunscreen products with SPF 55, like Aveeno sunscreen products with SPF 70 or 85, provide no additional clinical benefit over SPF 50 sunscreen products. For purposes of this Class Representation Complaint, however, Aveeno SPF 55 products are the closest products that Aveeno offers for the purpose of a price comparison to a product with SPF 50.

when, as J&J knew or should have known, these products do not block all or anywhere close to all of the sun's harmful rays.

7. J&J has further deceptively advertised, marketed and represented that the Aveeno Sun Protection Products provide "waterproof" and "continuous" protection from the sun's harmful rays when, as J&J knew or should have known, the protection provided by these products diminishes over a short period of time, and after exposure to or immersion in water or sweat and are, thus, not truly waterproof.

8. The SPF 70 and 85 representations, as well as the representations of "sunblock," "waterproof" and "continuous" protection on the Aveeno Sun Protection products are deceptive and misleading, and reasonably likely to deceive the public. Consumers purchase the premium priced Aveeno SPF 70 or SPF 85 products, in lieu of the less expensive products with lower SPF values, for the purpose of obtaining a product with greater UV radiation protection, that provides "sunblock," "waterproof," and "continuous" protection from the sun's harmful rays, benefits which the Aveeno Sun Protection products do not provide.

9. As a result of J&J's deceptive sun protection claims, consumers, including Plaintiff and members of the Class, have purchased products that do not perform as advertised.

10. J&J's conduct alleged herein constitutes an unconscionable, unfair and deceptive act or practice in violation of the Florida Deceptive and Unfair Trade Practices Act. Plaintiff, on behalf of herself and all others similarly situated, seeks an order enjoining such practices, including correction of the deceptive practices that have created confusion in the minds of consumers, as well as monetary damages for consumers who have purchased the products.

***The Neutrogena Sun Protection Products***

11. Neutrogena Corp. distributes, markets and sells various over-the-counter sun protection products throughout Florida. As alleged herein, Neutrogena Corp. engaged in unconscionable, unfair and deceptive acts or practices in connection with the labeling, advertising, marketing and sale of its Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55 and SPF 85, Pure & Free Baby Waterproof Sunblock Lotion SPF 60+, and Sensitive Skin Waterproof Sunblock Lotion SPF 60+ products in Florida (collectively referred to herein as "Neutrogena Sun Protection Products"), which have harmed Plaintiff and the Class.[5]

12. Neutrogena Corp. has deceptively advertised, marketed and represented to consumers that the Neutrogena Sun Protection Products with SPF values of 55, 60+ and 85, provide additional clinical benefit than other comparable sun protection products with SPF values of 50. Neutrogena Corp. has charged a premium for its SPF 55, 60+ and 85 products over comparable sun protection products with SPF values of 50 when, as Neutrogena Corp. knew or should have known, the protection provided by these products provided no additional clinical benefit than comparable sun protection products with SPF values of 50.

13. In addition, Neutrogena Corp. has deceptively advertised, marketed and represented that the Neutrogena Sun Protection Products provide "sunblock" protection from the sun's harmful rays when, as Neutrogena Corp. knew or should have known, these products do not block all or anywhere close to all of the sun's harmful rays.

14. Neutrogena Corp. has further deceptively advertised, marketed and represented that the Neutrogena Sun Protection Products provide "waterproof" and "sweatproof" protection from the sun's harmful rays when, as Neutrogena Corp. knew or should have known, the

[5] Plaintiff's claims, on behalf of herself and all others similarly situated, against Neutrogena, relate only to Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55 and SPF 85+, Pure & Free Baby Waterproof Sunblock Lotion SPF 60+ and Sensitive Skin Waterproof Sunblock Lotion SPF 60+ products that she purchased.

protection provided by these products diminishes over a short period of time, and after exposure to or immersion in water or sweat and are, thus, not truly waterproof or sweatproof.

15. The SPF 55, SPF 60+ and SPF 85 representations, as well as the representations of "sunblock," "waterproof" or "sweatproof" protection on the Neutrogena Sun Protection products are deceptive and misleading, and reasonably likely to deceive the public. Consumers purchase the premium priced Neutrogena SPF 55, SPF 60+ and SPF 85 products, in lieu of the less expensive products with lower SPF values, for the purpose of obtaining a product with greater UV radiation protection, that provides "sunblock," "waterproof" and "sweatproof" protection from the sun's harmful rays, which the Neutrogena SPF 55, SPF 60+ and SPF 85 products do not provide.

16. As a result of Neutrogena Corp.'s deceptive sun protection claims, consumers, including Plaintiff and members of the Class, have purchased products that do not perform as advertised.

17. Neutrogena Corp.'s conduct alleged herein constitutes an unconscionable, unfair and deceptive act or practice in violation of the Florida Deceptive and Unfair Trade Practices Act. Plaintiff, on behalf of herself and all others similarly situated, seeks an order enjoining such practices, including correction of the deceptive practices that have created confusion in the minds of consumers, as well as monetary damages for consumers who have purchased the products.

**PARTIES, JURISDICTION AND VENUE**

18. Plaintiff Vanessa Lombardo is a Florida resident who purchased Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 70 and SPF 85, and Neutrogena Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55 and SPF 85+, Neutrogena Pure

& Free Baby Waterproof Sunblock Lotion SPF 60+ and Neutrogena Sensitive Skin Waterproof Sunblock Lotion SPF 60+, at Target, Walgreens, and CVS stores located in Florida.

19. Defendant Johnson & Johnson Consumer Companies, Inc. is incorporated in New Jersey with its principal place of business in New Brunswick, New Jersey. Johnson & Johnson, the parent company of Defendant Johnson & Johnson Consumer Companies, Inc. acquired Aveeno in 1999, following which Aveeno became a Brand name of Johnson & Johnson Consumer Companies, Inc. At all relevant times, Defendant, Johnson & Johnson Consumer Companies, Inc., manufactured, marketed, distributed and sold various consumer products, including the Aveeno Sun Protection Products bearing the Aveeno brand that are the subject of this lawsuit, to Plaintiff and members of the class throughout Florida.

20. Defendant Neutrogena Corporation is incorporated in Delaware with its principal place of business in Los Angeles, California. Johnson & Johnson, the parent company of Defendant Neutrogena Corporation acquired Neutrogena Corporation in 1994, and Neutrogena Corporation a member of the Johnson & Johnson Family of Consumer Companies. At all relevant times, Neutrogena manufactured, marketed, distributed and sold various consumer products, including the Neutrogena Sun Protection Products bearing the Neutrogena brand that are the subject of this lawsuit, to Plaintiff and members of the class throughout Florida. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000 and is a class action in which members of the Class are citizens of a state different from Defendant.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District because Defendants:

a. are authorized to conduct business in this District and have intentionally availed

themselves of the laws and markets within this District through the distribution and sale of the Aveeno and Neutrogena sun protection products in this District;

b. do substantial business in this District; and

c. are subject to personal jurisdiction in this District.

**GENERAL ALLEGATIONS**

22. The Johnson & Johnson Family of Consumer Companies, which includes Defendants J&J and Neutrogena Corp., touts itself as offering the world's broadest range of health care products, including the Aveeno and Neutrogena Sun Protection Products that are at issue in this lawsuit. These products are marketed to the general public, including Florida residents. Despite the lack of science supporting Defendants' deceptive and misleading sun protection claims alleged herein, the Johnson & Johnson Family of Consumer Companies touts that its products, including the Aveeno and Neutrogena Sun Protection Products that are the subject of this lawsuit, are "supported by science, recommended by healthcare professionals, and trusted by people around the world," including consumers throughout Florida. *See* http://www.safetyandcarecommitment.com/commitment/faq (accessed Jan. 8, 2013, Jan. 3, 2014).

23. As alleged herein, J&J's and Neutrogena Corp.'s SPF claims described herein, as well as claims that the products provide "sunblock," "waterproof," "sweatproof" and "continuous" protection against the sun's harmful rays, which representations appear prominently and conspicuously on the products, are contrary to accepted science, and are deceptive and misleading, and reasonably likely to deceive members of the putative Class.

24. Further, J&J's unqualified claims on the Aveeno sun protection products that "higher SPF gives more sunburn protection," which representations appear prominently and

conspicuously on the products, are contrary to accepted science, and are deceptive and misleading, and reasonably likely to deceive members of the putative Class.

***<u>The Devastating Effects of Inadequate Sun Protection</u>***

25. The sun emits energy over a broad spectrum of wavelengths, including invisible ultraviolet (UV) rays. Ultraviolet rays that reach the earth's surface are made up of two types of rays, called ultraviolet A (UVA) and ultraviolet B (UVB), both of which have been found to cause serious health problems. While a small amount of exposure to sunlight may be healthy, too much exposure to the sun can be dangerous. UV radiation can cause premature aging, wrinkling, dark spots, leathery skin and loss of elasticity, as well as serious and permanent eye damage. In addition, overexposure to UV radiation may suppress the immune system, and weaken the body’s defenses so that it can no longer keep certain viruses under control. Further, UV radiation may promote skin cancer by damaging the DNA in skin cells, causing the skin to grow abnormally and develop benign or malignant growths, or by weakening the immune system and compromising the body’s natural defenses against aggressive cancer cells. *See* http://www.fda.gov/Radiation-EmittingProducts/RadiationEmittingProductsandProcedures/Tanning/ucm116432.htm (accessed Jan. 8, 2013).

26. The statistics relating to skin cancer are staggering. The number of skin cancer cases has been rising dramatically over the years, due to increasing exposure to UV radiation from the sun. Skin cancer is the most common form of cancer in the United States. More than 3.5 million skin cancers in over two million people are diagnosed annually. Each year there are more new cases of skin cancer than the combined incidence of cancers of the breast, prostate, lung and colon. Over the past three decades, more people have had skin cancer than all other

cancers combined. One in five Americans will develop skin cancer in their lifetime. *See* http://www.skincancer.org/skin-cancer-information/skin-cancer-facts (accessed Jan. 8, 2013).

27. At the beginning of 2007, more than 13 million people in the United States were living with at least one nonmelanoma skin cancer, typically diagnosed as basal cell carcinoma or squamous cell carcinoma. Basal cell carcinoma, which can be highly disfiguring, is the most common form of skin cancer and an estimated 2.8 million are diagnosed with this condition each year in the United States. Squamous cell carcinoma is the second most common form of skin cancer. An estimated 700,000 cases of squamous cell carcinoma are diagnosed each year in the United States. In 2012, between 3,900 and 8,800 people in the United States died from squamous cell carcinoma. About 90 percent of nonmelanoma skin cancers are associated with exposure to ultraviolet (UV) radiation from the sun. *See* http://www.skincancer.org/skin-cancer-information/skin-cancer-facts (accessed Jan. 8, 2013 and Jan. 3, 2014).

28. From 1970 to 2009, the incidence of melanoma increased by 800 percent among young women and 400 percent among young men. One person dies of melanoma every 57 minutes, and 1 in 50 men and women will be diagnosed with melanoma of the skin during their lifetime. An estimated 76,690 new cases of invasive melanoma will be diagnosed in the United States in 2013, with 9,840 estimated to result in death. Melanoma is one of only three cancers with an increasing mortality rate for men, along with liver cancer and esophageal cancer. . Between 2000 and 2009, the incidences of melanoma climbed 1.9 percent annually. In 2009, there were approximately 876,344 men and women alive in the United States with a history of melanoma. Melanoma is the most common form of cancer for young adults 25-29 years old and the second most common form of cancer for young people 15-29 years old. A person's risk for melanoma doubles if he or she has had more than five sunburns at any age. One or more

blistering sunburns in childhood or adolescence more than double a person's chances of developing melanoma later in life. About 86 percent of melanomas can be attributed to exposure to ultraviolet (UV) radiation from the sun, and the vast majority of mutations found in melanoma are caused by ultraviolet radiation. *See* http://www.skincancer.org/skin-cancer-information/skin-cancer-facts (accessed Jan. 8, 2013 and Jan. 3, 2014).

***The Sun Protection Factor***

29. Developed over more than 30 years, SPF value is universally considered the main information on the label of a sunscreen product. SPF values indicate the level of sunburn protection provided by the sunscreen product. All sunscreens must be tested according to an SPF test procedure. The test measures the amount of ultraviolet (UV) radiation exposure it takes to cause sunburn when a person is using a sunscreen in comparison to how much UV exposure it takes to cause a sunburn when they do not use a sunscreen. The product is then labeled with an SPF value indicating the amount of sunburn protection provided by the product. Because SPF values are determined from a test that measures protection against sunburn caused by Ultraviolet B ("UVB") radiation, SPF values only indicate a sunscreen's UVB protection. An SPF rating does not measure the degree of protection against Ultraviolet A ("UVA") radiation, which is responsible for early aging and skin cancer.

30. Consumers have become familiar with SPF values because SPF values have been included on sunscreen products for more than 30 years, and because of Defendants' marketing and advertising efforts. As part of this familiarity, consumers have become accustomed to associating higher SPF values with greater sun protection. While sunscreens with higher SPFs do filter out more UV rays that cause burning than those with lower SPFs, the SPF scale is non-linear. For example, consumers have been misled to believe that Aveeno and Neutrogena SPF

85 Sun Protection Products provide significantly more protection than comparable sun protection products with lower SPF values. However, the Aveeno SPF 85 Sun Protection Product at issue in this matter does not provide additional clinical benefit for consumers than comparable sun protection products with lower SPF values, including Aveeno SPF 55. Similarly, the Neutrogena SPF 85 Sun Protection Product at issue in this matter does not provide additional clinical benefit for consumers than comparable sun protection products with lower SPF values.

31. According to the FDA, which has been examining SPF values since 1978, sunscreen products with SPF values over 50 do not provide any increase in clinical benefit over SPF 50 sunscreen products. The FDA's findings are based on scientific tests that demonstrate SPF 100 sunscreens block 99 percent of UVB rays, while SPF 50 sunscreens block 98 percent of UVB rays– an insignificant difference that provides no additional clinical benefit to consumers. Indeed, the FDA has expressed "concern[] that labeling a product with a specific SPF value higher than 50 would be misleading to the consumer." 76 Fed. Reg. 35672.[6]

32. Thus, as described herein, J&J's SPF 70 and 85 representations, and Neutrogena's SPF 55, 60+ and 85 representations, are deceptive and misleading and reasonably likely to deceive the public.

***<u>J&J's Deceptive and Misleading Labeling</u>***

33. J&J manufacturers, markets and distributes throughout Florida the Aveeno Active Naturals line of sun protection products, including the Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 70 and SPF 85 products, which are the subject of this lawsuit and are sold at a variety of retail facilities throughout Florida.

[6] "[T]he agency is concerned that an average sunscreen consumer may ascribe more to high SPF values than is clinically relevant and that such products may further encourage the use of sunscreens as a safe way to prolong exposure." 65 Fed. Reg. 36319.

34. During the Class Period, J&J engaged in a common plan and scheme through a widespread, deceptive and misleading marketing campaign, including through labeling and advertising claims on its Aveeno Sun Protection Products, to induce consumers to purchase the products based on the purported benefits provided, including, but not limited to, deceptive and misleading claims about the SPF levels, as well as deceptive and misleading claims that the products provide “sunblock,” “waterproof” and “continuous” sun protection when J&J knew, or should have known, that these claims are deceptive and misleading.

35. J&J has engaged in this widespread, deceptive and misleading marketing campaign in order to cultivate an image that its products protect the skin against all of the sun’s harmful rays and remain effective regardless of the amount of the products’ exposure to or immersion in water. Since launching the Aveeno Active Naturals product line, J&J has consistently conveyed the uniform message to consumers throughout Florida that these products provide “sunblock,” “waterproof” and “continuous” protection against the sun’s harmful rays, and that the products’ 70 and 85 SPF values provide greater sun protection than lower SPF valued products, like Aveeno SPF 55. As described herein, these products do not perform as labeled and J&J’s sun protection claims are deceptive and misleading.

36. J&J, being fully aware of what its customers expect from its products, has concealed the fact that its sun protection products do not provide “sunblock,” “waterproof” or “continuous” protection against UVA and/or UVB rays as claimed, and that its premium priced SPF 70 and SPF 85 products do not provide any additional clinical benefit for consumers than its lower priced Aveeno sunscreen products with SPF values of 55.

37. The front labels of the Aveeno Sun Protection Products at issue, as shown below, indicate that they provide “waterproof,” “sunblock” and “continuous” protection from the sun’s harmful rays:




38. The back labels of the SPF 70 product indicates it provides “better, longer-lasting sun protection,” and the back label of the SPF 85 product indicates it provides “superior, long-lasting protection against skin damage caused by the sun.” Despite scientific evidence that sunscreens must be reapplied at least very two hours[7] to maintain their effectiveness, nowhere on either of the product labels, front or back, does J&J instruct consumers that the products must be

[7] The FDA has implemented regulations that require the directions for sunscreen products, including water resistant products to state, among other things, the product must be reapplied “at least every two hours.” 21 C.F.R. §201.327(e)(4). This regulation went into effect on June 18, 2012 and companies, including Johnson & Johnson, had until at least December 17, 2102 to comply. 77 Fed. Reg. 27591.

reapplied at least every two hours to maintain effectiveness, only to "reapply as needed or after towel drying, swimming or perspiring."

39. Further, despite the lack of scientific evidence that sun protection products with SPF values greater than 50 provide any additional clinical benefit than sun protection products with SPF values of 50, the back labels of the SPF 70 and SPF 85 products both indicate, without qualification, that "higher SPF gives more sunburn protection."

40. As described above, J&J has deceptively advertised, marketed and represented to consumers that the Aveeno Sun Protection Products with SPF values of 70 and 85 provide additional clinical benefits than its Aveeno Sun Protection Products with SPF values of 55. J&J has charged a premium for its SPF 70 and 85 products when, as J&J knew or should have known, the protection provided by these products provided no additional clinical benefit than comparable products, including its lower priced sun protection products with SPF values of 55.

41. In addition to its deceptive SPF representations, J&J represents to consumers that the Aveeno Sun Protection Products are "sunblock" lotions when, as J&J knew or should have known - especially in light of the above-described representations made on behalf of Defendants that the Aveeno Sun Protection Products at issue are "supported by science" - the Aveeno Sun Protection Products do not "block" all UV radiation. In fact, based on scientific studies, the FDA has identified that the term "sunblock" is "false and misleading." *See* 21 C.F.R. §201.327(g) and 76 Fed. Reg. 35620, 35643. In addition, the FDA has stated it is "concerned that the term 'sunblock' on the label of sunscreen drug products will be viewed as an absolute term which may mislead or confuse consumers into thinking that the product blocks all light from the sun." 64 Fed. Reg. 27666. Thus, J&J's representations that the Aveeno Sun Protection

Products provide "sunblock" protection against the sun's harmful rays are deceptive and misleading.

42. J&J has also deceptively advertised, marketed and represented that the Aveeno Sun Protection Products provide "waterproof" protection against the sun's harmful rays when, as J&J knew or should have known, the protection provided by these products diminished over a short period of time, and after exposure to or immersion in water, and are thus not truly "waterproof." In fact, the FDA has ruled that the term "waterproof" is "false and misleading" and has banned their use. *See* 21 C.F.R. §201.327(g)[8] and 76 Fed. Reg. 35620.

43. J&J has further deceptively advertised, marketed and represented that the Aveeno Sun Protection Products provide "continuous protection" when, as J&J knew or should have known, the sun protection provided by these products diminished over time and after exposure to or immersion in water or sweat, and must be reapplied every 2 hours to maintain their effectiveness even absent exposure to water or sweat, and thus did not truly constitute "continuous protection" from the sun's harmful rays.

44. There are only two material differences between Aveeno SPF 70 and 85, and Aveeno SPF 55: (1) the SPF values indicated on the label; and importantly (2) the price. Aveeno SPF 70 and 85 products retail for a premium over comparable products with lower SPF values, including Aveeno SPF 55, despite the fact that Aveeno SPF 70 and 85, and Aveeno SPF 55, contain the same active ingredients and, except for the deceptive SPF value, make virtually the same representations.

***<u>Neutrogena's Deceptive and Misleading Labeling Practices</u>***

45. Neutrogena Corp. manufactures, markets and distributes the Neutrogena line of sun protection Products, including the Neutrogena Ultra Sheer Dry-Touch Waterproof Sunblock

---

[8] At best, some sunscreen products are "water resistant," but no product is "waterproof." *See* 76 Fed. Reg. 35620.

SPF 55 and SPF 85+, Neutrogena Pure & Free Baby Waterproof Sunblock Lotion SPF 60+, and Neutrogena Sensitive Skin Waterproof Sunblock Lotion SPF 60+ product, which are the subject of this lawsuit and are sold at a variety of retail stores throughout Florida.

46. During the Class Period, Neutrogena Corp. engaged in a common plan and scheme through a widespread, deceptive and misleading marketing campaign, including through labeling and advertising claims on its Neutrogena Sun Protection Products, to induce consumers to purchase the products based on the purported benefits provided, including, but not limited to, deceptive and misleading claims about the SPF levels, as well as deceptive and misleading claims that the products provide "sunblock," "waterproof" and "sweatproof" sun protection when Neutrogena knew, or should have known, that these claims are false and misleading.

47. Neutrogena Corp. has engaged in this widespread, deceptive and misleading marketing campaign in order to cultivate an image that its products protect the skin against all of the sun's harmful rays and remain effective regardless of the amount of the products' exposure to or immersion in water. Since launching the Neutrogena Sun Protection product line, Neutrogena Corp. has consistently conveyed the message to consumers throughout Florida that these products provide "sunblock," "waterproof" and "sweatproof" protection against the sun's harmful rays, and that the products' 55, 60+ and 85 SPF values provide greater sun protection than comparable sun protection products with lower SPF values. As described herein, these products do not perform as labeled and Neutrogena's sun protection claims are deceptive and misleading.

48. Neutrogena Corp., being fully aware of what its customers expect from its products, has concealed the fact that its sun protection products do not provide "sunblock," "waterproof" and "sweatproof" protection against UVA and/or UVB rays as claimed, and that its

premium priced 55, 60+ and SPF 85 products do not provide any additional clinical benefit for consumers than comparable sun protection products with lower SPF values.

49. The front label of these products, as shown below, indicates that they provide "waterproof" and "sunblock" protection from the sun's harmful rays:




50. The back label of these products indicates the products are "waterproof" and "sweatproof." Despite scientific evidence that sunscreens must be reapplied at least very two hours to maintain their effectiveness, nowhere on any of the product labels, front or back, does Neutrogena Corp. instruct consumers that the products must be reapplied at least every two hours

to maintain effectiveness.[9] Instead the products simply indicate "for added protection, reapply after swimming, towel drying or extended sun exposure,[10]" or "reapply as needed, or after swimming, perspiring, towel drying or vigorous activity.[11]"

51. As described above, Neutrogena Corp. has deceptively advertised, marketed and represented to consumers that the Neutrogena Sun Protection Products with SPF values of 55, 60+ and 85, provide additional clinical benefit than comparable sun protection products with SPF values of 50. Neutrogena Corp. has charged a premium for its SPF 55, 60+ and 85 products over comparable sun protection products with an SPF value of 50, when, as Neutrogena Corp. knew or should have known, the protection provided by these products provided no additional clinical benefit than comparable sun protection products with an SPF value of 50.

52. In addition to its deceptive SPF representations, Neutrogena Corp. represents to consumers that the Neutrogena Sun Protection Products are "sunblock" lotions when, as Neutrogena Corp. knew or should have known - especially in light of the above-described representations made on behalf of Defendants that the Neutrogena Sun Protection Products at issue are "supported by science" - the Neutrogena Sun Protection Products do not "block" all UV radiation. In fact, the FDA has identified that the term "sunblock" is "false and misleading." *See* 21 C.F.R. §201.327(g) and 76 Fed. Reg. 35620, 35643. In addition, the FDA has stated it is "concerned that the term 'sunblock' on the label of sunscreen drug products will be viewed as an absolute term which may mislead or confuse consumers into thinking that the product blocks all light from the sun." 64 Fed. Reg. 27666. Thus, Neutrogena Corp.'s representations that the

---

[9] The FDA has implemented regulations that require the directions for sunscreen products, including water resistant products to state, among other things, the product must be reapplied "at least every two hours." 21 C.F.R. §201.327(e)(4). This regulation went into effect on June 18, 2012 and companies, including Johnson & Johnson, had until at least December 17, 2102 to comply. 77 Fed. Reg. 27591..

[10] This representation is made on the back label of the Neutrogena Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55 and SPF 85+ products.

[11] This representation is made on the back label of the Neutrogena Pure & Free Baby Waterproof Sunblock Lotion SPF 60+, and Neutrogena Sensitive Skin Waterproof Sunblock Lotion SPF 60+ products.

Neutrogena Sun Protection Products provide "sunblock" protection against the sun's harmful rays are deceptive and misleading.

53. Neutrogena Corp. has also deceptively advertised, marketed and represented that the Neutrogena Sun Protection Products provide "waterproof" and "sweatproof" protection against the sun's harmful ultraviolet rays when, as Neutrogena knew or should have known, the protection provided by these products diminished over a short period of time, and after exposure to or immersion in water, and are thus not truly "waterproof" or "sweatproof." In fact, the FDA has ruled that the terms "waterproof" and "sweatproof" are "false and misleading" and has banned their use. [12] *See* 21 C.F.R. §201.327(g)[13] and 76 Fed. Reg. 35620, 35643.

54. There are only two material differences between Neutrogena SPF 55, 60+ and 85 products, and comparable products with an SPF value of 50: (1) the SPF values indicated on the label; and importantly (2) the price. Neutrogena SPF 55, 60+ and 85 products retail for a premium over comparable products with lower SPF values, including other Neutrogena SPF 50 sunscreen products, despite the fact that the Neutrogena SPF 55, 60+ and 85 products contain the same active ingredients and, except for the SPF value, make virtually the same representations.

***<u>The Impact of J&J's Deception</u>***

55. As the manufacturer and distributor of the Aveeno Sun Protection Products, J&J possess specialized knowledge regarding the content and effects of the ingredients contained in its those products and is in a superior position to learn of the effects (or lack thereof) – and has learned of the effects (or lack thereof) – those products have on consumers.

---

[12] The FDA agreed that the terms "waterproof" and "sweatproof" are false and misleading because the terms are "essentially exaggerations of performance that FDA does not think can be substantiated."

[13] At best, some sunscreen products are "water resistant," but no product is "waterproof." *See* 76 Fed. Reg. 35620, 35643.

56. Despite scientific evidence that its sun protection products with SPF values higher than 50 provide no additional clinical benefit than products with SPF values of 50, J & J sold its SPF 70 and SPF 85 products at a premium price over lower value SPF products, such as Aveeno SPF 55. J & J knew, but failed to disclose to consumers, that Aveeno SPF 70 and SPF 85 products do not provide superior UV protection compared to less expensive, lower value SPF products, such as Aveeno SPF 50. Instead, without any scientific basis or qualification, J&J disclosed on the products that "higher SPF gives more sunburn protection," leading reasonable consumers to believe that the Aveeno SPF 70 and SPF 85 products provide additional clinical benefits than lower value SPF products, such as Aveeno SPF 50, which they do not.

57. Further, despite scientific evidence that no sunscreen product is "waterproof" or "blocks" all UV radiation, and that sunscreens must be reapplied at least very two hours to maintain their effectiveness, J&J represented to consumers on its product labels that the Aveeno Sun Protection Products provided "sunblock," "waterproof" and "continuous" protection from the sun's harmful rays.

58. J&J's "sunblock," "waterproof" and "continuous" protection representations, particularly when coupled with the "SPF 70" or "SPF 85" representations, were designed to deceive and induce, or had the effect of deceiving and inducing, consumers into purchasing the Aveeno Sun Protection Products based on a deceptive and false sense of security that they need not reapply the products except "as needed or after towel drying, swimming, or perspiring" as directed on the product's label. J & J's "sunblock," "waterproof," "continuous protection," and "SPF 70" and "SPF 85" claims are deceptive and misleading, and reasonably likely to deceive the public.

59. J&J's sun protection claims are designed to take advantage of consumers seeking protection from the sun's harmful rays. Every consumer who purchased the Aveeno SPF 70 and Aveeno SPF 85 products was exposed to the SPF 70 and SPF 85 claims, including claims that "higher SPF gives more sunburn protection," as well as claims that the products provided "sunblock," "waterproof" and "continuous" protection, which representations appeared prominently and conspicuously on the product labels.

60. Plaintiff and members of the Class have been misled and deceived into purchasing products that did not perform as J&J represented. But for the deceptive and misleading claims set forth above, Plaintiff and the other members of the Class would not have purchased Aveeno sunscreen products or would not have paid the premium prices charged for Aveeno Sun Protection Products, which were based in part on the misrepresentation that SPF 70 and SPF 85 provided additional clinical protection products with lower SPF values, like Aveeno SPF 55 products, and that they provided "sunblock," "waterproof" and "continuous" protection from the sun's harmful rays. Plaintiff and Class Members have suffered an economic loss by their purchase of the Aveeno Sun Protection Products.

61. Plaintiff and Class Members have been and are continuing to be deceived or misled by J&J's deceptive sun protection claims, including representations that "higher SPF gives more sunburn protection." Plaintiff and Class Members purchased and applied the Aveeno Sun Protection products during the class period and, in doing so, were exposed to the prominent and conspicuous deceptive and misleading labeling on the front and center, and back labels, of Aveeno's Sun Protection Products.

***The Impact of Neutrogena's Deception***

62. As the manufacturer and distributor of the Neutrogena Sun Protection Products, Neutrogena Corp. possesses specialized knowledge regarding the content and effects of the ingredients contained in its those products and is in a superior position to learn of the effects (or lack thereof) – and has learned of the effects (or lack thereof) – those products have on consumers.

63. Despite scientific evidence that its sun protection products with SPF values higher than 50 provide no additional clinical benefit than products with SPF values of 50, Neutrogena Corp. sold its SPF 50, 60+ and SPF 85 products at a premium price over lower value SPF products, such as Neutrogena SPF 50. Neutrogena Corp. knew, but failed to disclose to consumers, that Neutrogena SPF 55, 60+ and 85 products do not provide superior UV protection than comparable, lower priced sun protection products with lower SPF values.

64. Despite scientific evidence that no sunscreen product is "waterproof," "sweatproof" or "blocks" all UV radiation, and that sunscreens must be reapplied at least very two hours to maintain their effectiveness, Neutrogena Corp. represented to consumers on its product labels that the Neutrogena Sun Protection Products provided "sunblock," "waterproof" and "sweatproof" protection from the sun's harmful rays.

65. Neutrogena Corp.'s "sunblock," "waterproof" and "sweatproof" representations, particularly when coupled with the "SPF 55," "SPF 60+" or "SPF 85" representations, were designed to deceive and induce, or had the effect of deceiving and inducing, consumers into purchasing the Neutrogena Sun Protection Products based on a deceptive and false sense of security that they need not reapply the products when the products simply indicate "for added

protection, reapply after swimming, towel drying or extended sun exposure," or "reapply as needed, or after swimming, perspiring, towel drying or vigorous activity."

66. Neutrogena's sun protection claims are designed to take advantage of consumers seeking protection from the sun's harmful rays. Every consumer who purchased the Neutrogena SPF 55, 60+ and 85 products was exposed to the SPF 55, 60+ and 85 claims, as well as the claims that the products provided "sunblock," "waterproof" and "sweatproof" protection, which representations appeared prominently and conspicuously on the front and center, and back label, of the products.

67. Plaintiff and the other members of the Class have been misled and deceived into purchasing products that did not perform as Neutrogena Corp. represented. But for the deceptive and misleading claims set forth above, Plaintiff and members of the Class would not have purchased Neutrogena Sun Protection Products or would not have paid the premium prices charged for Neutrogena Sun Protection Products, which were based in part on the misrepresentation that SPF 55, 60+ and 85 products provided additional clinical protection than comparable products with SPF 50, and that they provided "sunblock," "waterproof" and "sweatproof" protection from the sun's harmful rays. Plaintiff and Class Members have suffered an economic loss by their purchase of the Neutrogena Sun Protection Products.

68. Plaintiff and Class Members have been and are continuing to be deceived or misled by Neutrogena's Corp.'s deceptive sun protection claims. Plaintiff and Class Members purchased and applied the Neutrogena Sun Protection products during the class period and, in doing so, were exposed to the prominent and conspicuous deceptive and misleading labeling on the front and center, and back labels, of Neutrogena's Sun Protection Products.

**PLAINTIFF'S PURCHASE OF DEFENDANTS' PRODUCTS**

69. Throughout the class period, Plaintiff Lombardo purchased the Aveeno Sun Protection Products, including Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 70 and Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 85 products, and Neutrogena Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55 and SPF 85, Neutrogena Pure & Free Baby Waterproof Sunblock Lotion SPF 60+ and Neutrogena Sensitive Skin Waterproof Sunblock Lotion SPF 60+ products from retail stores in Florida.

70. Prior to purchasing the Aveeno Sun Protection Products, Plaintiff was exposed to and saw J&J's claims of SPF 70 UVA/UVB protection and SPF 85 UVA/UVB protection, as well J&J's claims that the products provided "sunblock," "waterproof" and "continuous" protection from the sun's harmful rays, by reading the product labels.

71. Plaintiff purchased Aveeno Sun Protection Products, to the exclusion of other sun protection products, particularly products that were not waterproof or purported sunblock lotions, and products with lower SPF values. Had Plaintiff known the truth and accuracy about J&J's misrepresentations and omissions, including that the products did not "block" the sun's harmful rays, were not "waterproof," did not provide "continuous protection," and that the higher SPF values of 70 and 85 provided no additional clinical benefit than products with lower SPF values, like Aveeno SPF 55 products, she would not have purchased Aveeno sunscreen products or would not have paid the premium prices charged for Aveeno sunscreen products, which were based in part on the misrepresentation that SPF 70 and SPF 85 provided additional clinical protection than products with lower SPF values, like Aveeno SPF 55 products, and that they provided "waterproof," "sunblock" and "continuous" protection from the sun's harmful rays.

The Aveeno Sun Protection Products Plaintiff purchased do not perform as J&J represented. As a result, Plaintiff Lombardo suffered injury in fact and lost money.

72. Prior to purchasing the Neutrogena Sun Protection Products, Plaintiff was exposed to and saw claims of SPF 55, 60+ and 85 protection, as well as Neutrogena Corp.'s claims that the products provided "sunblock," "waterproof" and "sweatproof" protection from the sun's harmful rays, by reading the product labels.

73. Plaintiff purchased Neutrogena Sun Protection Products, to the exclusion of other sun protection products, particularly products that were not waterproof, sweatproof or purported sunblock lotions, and products with lower SPF values. Had Plaintiff known the truth about Neutrogena Corp.'s misrepresentations and omissions, including that the products did not "block" the sun's harmful rays, were not "waterproof" or "sweatproof," and that the higher SPF values of 55, 60+ and 85 provided no additional clinical benefit than comparable products with an SPF value of 50, she would not have purchased Neutrogena Sun Protection Products or would not have paid the premium prices charged for Neutrogena Sun Protection Products, which were based in part on the misrepresentation that SPF 50, 60+ and 85 products provided additional clinical protection than comparable products with SPF 50, and that they provided "waterproof," "sweatproof" and "sunblock" protection from the sun's harmful rays. The Neutrogena Sun Protection Products Plaintiff purchased do not perform as represented. As a result, Plaintiff Lombardo suffered injury in fact and lost money. In addition, Plaintiff continues to be misled by deceptive representations that higher SPF values provides greater sunburn protection.

## **CLASS REPRESENTATION ALLEGATIONS**

### **Class Definition**

74. Plaintiff incorporates and realleges the above paragraphs.

75. Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil procedure.

76. Plaintiff sues on behalf of herself and a Class defined as:

> All Florida residents who purchased the following products in Florida from 2009 to present,: Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 70, Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 85, Neutrogena Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55, Neutrogena Ultra Sheer Dry-Touch Waterproof Sunblock SPF 85, Neutrogena Pure & Free Baby Waterproof Sunblock Lotion SPF 60+ and Neutrogena Sensitive Skin Waterproof Sunblock Lotion SPF 60+.
>
> Excluded from the class are products that (1) were sold on or after June 17, 2011 (the date the Food and Drug Administration's Final Rule was enacted) and (2) were labeled before December 17, 2012 (the deadline for compliance with the Food and Drug Administration's Final Rule), and which are regulated by the Final Rule and in compliance with the Final Rule.
>
> Excluded from the Class are J&J and Neutrogena Corp. and any officer, director, employee, legal counsel, firm, trust, corporation, or other entity related to or affiliated with J&J or Neutrogena, and the members of the judiciary and their office staff to whom this case may be assigned.

77. Numerosity: Members of the Class are so numerous and geographically dispersed throughout Florida that individual joinder of all members is impracticable. The exact number of Class Members remains unknown to Plaintiff at this time. However such information is in the exclusive control of Defendants. Upon information and belief, there are hundreds, if not thousands, of putative Class Members. J&J and Neutrogena Corp. sell their Aveeno and Neutrogena Sun Protection Products in hundreds, if not thousands, of retail establishments throughout Florida. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and the Court.

78. Common Questions of Law and Fact: All Members of the Class have been subject to and affected by the same practices and policies and common thread of misconduct resulting in injury to Plaintiff and all other members of the Class as described herein. There are

numerous questions of law and fact that are common to the Class. These questions include, but are not limited to the following:

a. whether J&J's labeling of its Aveeno Sun Protection Products is unfair or deceptive;

b. whether Neutrogena Corp.'s labeling of its Neutrogena Sun Protection Products is unfair or deceptive;

c. whether J&J's labeling of its Aveeno Sun Protection Products is likely to deceive an objectively reasonable consumer;

d. whether Neutrogena Corp.'s labeling of its Neutrogena Sun Protection Products is likely to deceive an objectively reasonable consumer;

e. whether J&J's acts or practices described herein were in violation of the Florida Deceptive and Unfair Trade Practices Act, F.S. §§ 501.201, *et. seq.*;

f. whether Neutrogena Corp.'s acts or practices described herein were in violation of the Florida Deceptive and Unfair Trade Practices Act, F.S. §§ 501.201, *et. seq.*;

g. whether Plaintiff and the other members of the Class have sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages; and

h. whether Plaintiff and the other members of the Class are entitled to injunctive and other equitable relief.

79. Typicality: Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff and all Class Members purchased the Aveeno and Neutrogena Sun Protection Products, and were injured based on J&J's and Neutrogena Corp.'s respective uniform deceptive and misleading claims in the labeling and advertising of these products during the Class Period

and have sustained damages as a result. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other members of the class.

80. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class and is committed to the vigorous prosecution of this action. Plaintiff's interests are aligned with the Class and Plaintiff has no interests adverse to the class. Plaintiff has retained counsel who are competent and experienced in class-action litigation.

81. Predominance: The common questions of law and fact relating to the claims of Plaintiff and the claims of each Class member predominate over any question of law or fact affecting only individual members of the class. Plaintiff is not aware of any individual claims covering the issues raised in the Complaint, nor is she aware of the expressed interest of any other individual in controlling this litigation. Each member will be identified through discovery from Defendants, and will be notified and given an opportunity to opt out of the class in the event he or she has no interest in being represented by this action, or if for any reason he or she prefers to be excluded from the class. The judgment will not be binding on those members who opt out of the class. Consequently, any potential Class Members who have an interest in prosecuting separate claims and controlling their own litigation against Defendant will not be prejudiced by this action.

82. Manageability: There are no difficulties likely to be encountered in the management of this action as a class action that could not be managed by the Court: (a) the advantages of maintaining the action as a class action far outweigh the expense and waste of judicial effort that would result in thousands of separate adjudications of these issues for thousands of Class Members; and (b) class treatment further insures uniformity and consistency in results.

83. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the Class claims herein asserted in that:

- Individual claims by Class Members are impracticable as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake;
- As a result, individual members of the Class have no interest in prosecuting and controlling separate actions;
- It is desirable to concentrate litigation of the claims herein in this forum; and
- The proposed class action is manageable.

## CAUSES OF ACTION

### COUNT I
**(Florida Deceptive and Unfair Trade Practices Act)**
**(against Defendant J&J)**

84. Plaintiff incorporates, restates, and realleges the above paragraphs as if fully set forth herein.

85. Plaintiff asserts this cause of action on behalf of herself and the Class.

86. Plaintiff and the other Class Members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

87. FDUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

88. For the reasons discussed herein, J&J violated and continues to violate FDUTPA by engaging in the unconscionable, deceptive, unfair acts or practices described herein and proscribed by Florida Statute §501.201, *et seq*. J&J's affirmative misrepresentations, omissions

and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

89. J&J's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, J&J engaged in deceptive advertising, and misrepresented and omitted material facts regarding the Aveeno Sun Protection Products, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

90. J&J violated FDUTPA by engaging in the unfair and deceptive practices, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers, including the following acts:

a. disseminating standardized advertisements including product labels that deceptively described the level of SPF protection received from the sun's ultraviolet rays;

b. failing to disclose to Plaintiff and the other members of the Class that the subject products do not provide protection against certain harmful UVA rays and to the extent they provide UVA protection such protection is significantly less than the protection provided against UVB rays as specified in the SPF designation;

c. misrepresenting the products as "waterproof;"

d. misrepresenting that the products provide "continuous protection; and

e. misrepresenting the products as "sunblock."

91. J&J's "sunblock," "waterproof" and "continuous" representations, particularly when coupled with the "SPF 75" or "SPF 85" representations, were designed to lure consumers into purchasing the Aveeno Sun Protection Products based on a false sense of security that they need not reapply the products except "as needed or after towel drying, swimming, or perspiring"

as directed on the product labels. J&J's "sunblock," "waterproof," and "continuous protection" claims are false, misleading and reasonably likely to deceive the public.

92. Consumers purchase the premium priced Aveeno SPF 70 or SPF 85 products, in lieu of the less expensive products with lower SPF values, for the purpose of obtaining a product with greater UV radiation protection, that provides "sunblock," "waterproof," and "continuous" protection from the sun's harmful rays, which the Aveeno Sun Protection products do not provide.

93. J&J represented and failed to disclose material facts on the products' labeling and packaging when it knew, or should have known, that the representations were deceptive and misleading, and reasonably likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment. As a result of J&J's sun protection claims, consumers, including Plaintiff and members of the Class, have purchased a product that does not perform as advertised.

94. Plaintiff and the other members of the Class purchased the Aveeno Sun Protection after viewing deceptive and misleading statements and representations in the labeling and advertising of these products. Plaintiff and the other members of the Class purchased the Aveeno Sun Protection Products and paid a premium price for the products because they reasonably believed that these products provided the purported sun protection benefits claimed. Accordingly, Plaintiffs and the Class suffered an ascertainable loss as a result of having bought the Aveeno Sun Protection Products that were the subject of the misleading claims during the Class Period.

95. FDUTPA specifically provides for injunctive relief relating to alleged unfair and deceptive trade practices. Without an injunction preventing Defendants from making deceptive

and misleading statements on the labeling of the products, including, but not limited to, representations that "higher SPF gives more sunburn protection," consumers, including Plaintiff and the class, will continue to be deceived. Therefore, pursuant to § 501.211(1), Florida Statutes (2009), Plaintiff seeks a declaration that Defendants' deceptive conduct has violated and continues to violate FDUTPA and seeks injunctive relief regarding Defendants' past and continuing deceptive conduct except that Plaintiff does not seek any such declaratory or injunctive relief for products which are regulated by the Final Rule and are in compliance with the Final Rule. Plaintiff reserves the right to allege other violations of FDUTPA as Defendant's conduct is ongoing.

96. As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff and the other Class Members have been damaged and are entitled to recover actual damages, to the extent permitted by law, including §501.211, Florida Statutes (2009) and class action rules, in an amount to be proven at trial. In addition, pursuant to §501.211, Florida Statutes (2009), Plaintiff and the Class seek equitable relief and to enjoin Defendant on the terms that the Court considers reasonable. Plaintiff also seeks reasonable attorneys' fees and costs, as well as statutory damages as prescribed by §§ 501.211(2) and 501.2075, Florida Statutes (2009).

**COUNT II**
**(Florida Deceptive and Unfair Trade Practices Act)**
**(Against Defendant Neutrogena Corp.)**

97. Plaintiff incorporates, restates, and realleges the above paragraphs as if fully set forth herein.

98. Plaintiff asserts this cause of action on behalf of herself and the Class.

99. Plaintiff and Class Members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

100. FDUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

101. For the reasons discussed herein, Neutrogena Corp. violated and continue to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq*. Neutrogena Corp's affirmative misrepresentations, omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

102. Neutrogena Corp.'s actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Neutrogena Corp. engaged in deceptive advertising, and misrepresented and omitted material facts regarding the Neutrogena Sun Protection Products, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

103. Neutrogena Corp. violated FDUTPA by engaging in the unfair and deceptive practices, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers, including the following acts:

a. disseminating standardized advertisements including product labels that deceptively described the level of SPF protection received from the sun's ultraviolet rays;

b. misrepresenting the products as "waterproof;"

c. misrepresenting the products as "sweatproof," and

d. misrepresenting the products as "sunblock."

104. Neutrogena Corp.'s "sunblock" and "waterproof" representations, particularly when coupled with the "SPF 55," "SPF 60+" or "SPF 85" representations, were designed to deceive and induce, or had the effect of deceiving and inducing, consumers into purchasing the Neutrogena Sun Protection Products based on a deceptive and false sense of security that they need not reapply the products when the products simply indicate "for added protection, reapply after swimming, towel drying or extended sun exposure," or "reapply as needed, or after swimming, perspiring, towel drying or vigorous activity."

105. Consumers purchase the premium priced Neutrogena SPF 55, SPF 60+ and SPF 85 products, in lieu of the less expensive products with lower SPF values, for the purpose of obtaining a product with greater UV radiation protection, for the purpose of obtaining a product with greater UV radiation protection, that provides "sunblock," "waterproof," "sweatproof" and "continuous" protection from the sun's harmful rays, which the Neutrogena SPF 55, SPF 60+, SPF 85 products do not provide.

106. Neutrogena Corp. represented and failed to disclosure material facts on the products' labeling and packaging when it knew, or should have known, that the representations were false and misleading, and reasonably likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment. As a result of Neutrogena Corp's deceptive and misleading sun protection claims described herein, consumers, including Plaintiff and members of the Class, have purchased a product that does not perform as advertised.

107. Plaintiff and the other members of the Class purchased the Neutrogena Sun Protection Products after viewing misleading statements and representations in the labeling and advertising of these products. Plaintiff and the other members of the Class purchased the Neutrogena Corp. products and paid a premium price for the products because they reasonably believed that these products provided the purported sun protection benefits claimed. Accordingly, Plaintiffs and the other members of the Class suffered an ascertainable loss as a result of having bought the Neutrogena Corp. products that were the subject of the misleading claims during the Class Period.

108. FDUTPA specifically provides for injunctive relief relating to alleged unfair and deceptive trade practices. *See* Fla. Stat. § 501.211(1). Without an injunction preventing Defendants from making deceptive and misleading statements on the labeling of the products, consumers, including Plaintiff and the class, will continue to be deceived. Therefore, pursuant to § 501.211(1), Florida Statutes (2009), Plaintiff seeks a declaration that Defendants' deceptive conduct has violated and continues to violate FDUTPA and seeks injunctive relief regarding Defendants' past and continuing deceptive conduct except that Plaintiff does not seek any such declaratory or injunctive relief for products which are regulated by the Final Rule and are in compliance with the Final Rule.

109. Plaintiff reserves the right to allege other violations of FDUTPA as Defendant's conduct is ongoing.

110. As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff and the other Class Members have been damaged and are entitled to recover actual damages, to the extent permitted by law, including §501.211, Florida Statutes (2009) and class action rules, in an amount to be proven at trial. In addition, pursuant to

§501.211, Florida Statutes (2009), Plaintiff and the Class seek equitable relief and to enjoin Defendants on the terms that the Court considers reasonable. Plaintiff also seeks reasonable attorneys' fees and costs, as well a statutory damages as prescribed by §§ 501.211(2) and 501.2075, Florida Statutes (2009).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class, demands judgment against Defendants as follow:

A. Certification of this case as a class action;

B. Appointment of Plaintiff as a representative of the Class;

C. Appointment of the undersigned as Class Counsel;

D. Holding Defendants liable to Plaintiff and Class Members for actual damages in such amount as the Court or Jury may determine;

E. Awarding declaratory and injunctive relief as permitted by law;

F. Awarding Plaintiff and Class Members attorneys' fees and all litigation costs; and

G. Awarding Plaintiff and Class Members such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated: January 7, 2014

Respectfully submitted,

*/s/John Yanchunis*
John A. Yanchunis
Florida Bar No. 324681
Rachel L. Soffin
Florida Bar No. 18054
J. Andrew Meyer
Florida Bar No. 0056766

Christopher S. Polaszek
Florida Bar No. 116866
**Morgan & Morgan**
**Complex Litigation Group**
One Tampa City Center
201 N. Franklin St., 7th Fl.
Tampa, FL 33602
Telephone: (813) 314-6484
Facsimile: (813) 222-2406
Email: jyanchunis@forthepeople.com
Email: rsoffin@forthepeople.com
Email: ameyer@forthepeople.com
Email: cpolaszek@forthepeople.com

Peter Safirstein
New York Bar No. 2044550
Elizabeth S. Metcalf
New York Bar No. 4644431
**Morgan & Morgan, P.C.**
28 West 44th Street, Suite 2001.
New York, NY 10036
Telephone: (212) 564-1637
Facsimile: (212) 564-1807
Email: psafirstein@forthepeople.com
Email: emetcalf@forthepeople.com