UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-CV-60536-CIV-SCOLA

| | |
|---|---|
| VANESSA LOMBARDO, on Behalf of Herself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| JOHNSON & JOHNSON CONSUMER COMPANIES, INC., and NEUTROGENA CORPORATION, | ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS JOHNSON & JOHNSON CONSUMER COMPANIES, INC., AND NEUTROGENA CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Defendants Johnson & Johnson Consumer Companies, Inc., ("CPC") and Neutrogena Corporation ("Neutrogena") (collectively, "Defendants"), by and through their undersigned counsel, hereby answer Plaintiff's Amended Class Action Complaint ("Complaint") on knowledge as to Defendants' own conduct and on information and belief as to all other matters.

## GENERAL DENIAL

Except as expressly addressed below, Defendants deny each and every allegation in Plaintiff's Complaint (including, without limitation, any allegations contained in headings or subheadings of Plaintiff's Complaint) and specifically deny any liability to Plaintiff or the putative class. Defendants expressly reserve the right to seek to amend and/or supplement this Answer as may be Necessary.

The numbered paragraphs and headings and subheadings below respond to the corresponding numbered paragraphs and headings and subheadings of the Complaint.

## <u>NATURE OF ACTION</u>

1.       Defendants admit that plaintiff attempts to bring this action on behalf of a proposed Florida class, but otherwise denies the allegations in Paragraph 1.

2.       CPC admits that it manufactured, marketed, distributed, and sold the Aveeno Active Naturals Continuous Protection™ Sunblock Lotion FACE SPF 70 product from the beginning of the class period until November 5, 2012, and that it manufactured, marketed, and distributed the Aveeno Active Naturals Continuous Protection® Sunblock Lotion SPF 85 product from January 29, 2010 to November 5, 2012 (the "Aveeno Sun Protection Products").[1] Neutrogena manufactured, marketed, distributed, and sold the Neutrogena Ultra Sheer Dry Touch Sunblock SPF 55, Ultra Sheer Dry Touch Sunblock SPF 85, Pure & Free Baby Sunblock Lotion SPF 60+, and Sensitive Skin Sunblock Lotion SPF 60+ sun protection products from the beginning of the class period until no later than December 17, 2012 (the "Neutrogena Sun Protection Products").[2] Defendants deny the remainder of the allegations in Paragraph 2.

3.       To the extent the allegations in Paragraph 3 state a conclusion of law they require no answer.  In response to the third sentence of Paragraph 3, Defendants admit that the Federal

---

[1] CPC specifically and expressly incorporates the date ranges the Aveeno Sun Protection Products were manufactured, marketed, distributed, and sold into each and every admission or denial involving Aveeno Sun Protection Products from henceforth in this Answer.  CPC denies any and every allegation in the Answer that alleges or purports to allege that CPC manufactured, marketed, distributed, or sold the Aveeno Sun Protection Products after November 5, 2012 (or before January 29, 2010 in the case of the SPF 85 product).

[2] Neutrogena specifically and expressly incorporates the date ranges the Neutrogena Sun Protection Products were manufactured, marketed, distributed, and sold into each and every admission or denial involving Neutrogena Sun Protection Products from henceforth in this Answer.  Neutrogena denies any and every allegation in the Answer that alleges or purports to allege that Neutrogena manufactured, marketed, distributed, or sold the Neutrogena Sun Protection Products after December 17, 2012.

Drug Administration ("FDA") examined certain labeling claims in the June 17, 2011 Final Rule (76 Fed. Reg. 35620) and promulgated a regulation (21 C.F.R. §201.327(g)), the contents of which speak for themselves, and otherwise deny any characterization that is inconsistent with their meaning when considered in their entirety.   Defendants deny the remainder of the allegations in Paragraph 3.

### *The Aveeno Sun Protection Products*

4.     CPC admits that it markets various sun protection products throughout Florida, and that it distributes these products to some customers in Florida, but it specifically denies the allegation that it distributes sun protection products throughout Florida, or that it sells these products directly to consumers in Florida.  To the extent the allegations in Paragraph 4 state a conclusion of law they require no answer.  CPC denies the remainder of  Paragraph 4.

5.     To the extent the allegations in Paragraph 5 state a conclusion of law they require no answer.  CPC admits that the Aveeno Active Naturals Continuous Protection™ Sunblock Lotion Face SPF 70 was labeled with an SPF value of 70 and contained the sentence "higher SPF gives more sunburn protection" on its back label from the beginning of the class period until November 5, 2012.   CPC further admits that the Aveeno Active Naturals Continuous Protection® Sunblock Lotion SPF 85 was labeled with an SPF value of 85 and contained the sentence "higher SPF gives more sunburn protection" on its back label from January 29, 2010 to November 5, 2012.  CPC states that the Aveeno Sun Protection Products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of  Paragraph 5.

6.     To the extent the allegations in Paragraph 6 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products' labels contained the term

"Sunblock."  CPC states that the Aveeno Sun Protection Products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 6.

7.      To the extent the allegations in Paragraph 7 state a conclusion of law they require no answer. CPC admits that the Aveeno Sun Protection Products' labels contained the terms "waterproof," and either "Continuous Protection®" or "Continuous Protection™".   CPC states that the Aveeno Sun Protection Products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 7.

8.      To the extent the allegations in Paragraph 8 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 8.

9.      To the extent the allegations in Paragraph 9 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 9.

10.      To the extent the allegations in Paragraph 10 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 10.

### *The Neutrogena Sun Protection Products*

11.      To the extent the allegations in Paragraph 11 state a conclusion of law they require no answer. Neutrogena admits that it markets various sun protection products throughout Florida, and that it distributes these products to some customers in Florida, but it specifically denies the allegation that it distributes sun protection products throughout Florida, or that it sells these products directly to consumers in Florida Neutrogena denies the remainder of Paragraph 11.

12.     To the extent the allegations in Paragraph 12 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products are labeled with the SPF values of 55, 60+ and 85 on the principal display panels.  Neutrogena states that the products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena denies the remainder of  Paragraph 12.

13.     To the extent the allegations in Paragraph 13 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products' principal display panels contained the term "Sunblock."  Neutrogena states that the products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena denies the remainder of  Paragraph 13.

14.     To the extent the allegations in Paragraph 14 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products' labels contained the terms "waterproof" and "sweatproof."  Neutrogena states that the products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena denies the remainder of Paragraph 14.

15.     To the extent the allegations in Paragraph 15 state a conclusion of law they require no answer.  Neutrogena denies the remainder of  Paragraph 15.

16.     To the extent the allegations in Paragraph 16 state a conclusion of law they require no answer.  Neutrogena denies the remainder of  Paragraph 16.

17.     To the extent the allegations in Paragraph 17 state a conclusion of law they require no answer.  Neutrogena denies the remainder of  Paragraph 17.

## PARTIES, JURISDICTION, AND VENUE

18.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 18, and therefore deny those allegations.

19.     CPC admits that it is incorporated in New Jersey, acquired Aveeno® in 1999, and that it is part of the Johnson & Johnson Family of Companies, but otherwise denies the remaining allegations in Paragraph 19, subject to CPC's admissions in Paragraph 4.

20.     Neutrogena admits that it is incorporated in Delaware, has its principal place of business in Los Angeles, California, was acquired by Johnson & Johnson in 1994, and is a member of the Johnson & Johnson Family of Companies, but otherwise denies the remaining allegations in the first three sentences of Paragraph 20, subject to Neutrogena's admissions in Paragraph 11.  In response to the fourth and last sentences of Paragraph 20, Defendants admit that this is a proposed class action in which members of the putative class are citizens of states different from Defendants, and that more than two-thirds of the proposed class members reside in states other than the state in which Defendants are citizens.  Defendants deny that this Court has subject matter jurisdiction over this matter, and otherwise lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of the last sentence of Paragraph 20, and therefore deny those allegations.

21.     Defendants admit that they are authorized to and do conduct business in this District, are subject to personal jurisdiction in this District, and that venue is proper in this District.  Defendants deny the remainder of Paragraph 21.

## GENERAL ALLEGATIONS

22.     Defendants admit that the Aveeno and Neutrogena Sun Protection Products at issue in the Amended Complaint are marketed to the general public, including Florida residents, and that the Johnson & Johnson Family of Consumer Companies maintains a safety and care commitment FAQ webpage at http://www.safetyandcarecommitment.com/commitment/faq, the contents of which speak for itself, and admit that Plaintiff has quoted excerpts from that website. Defendants deny any characterization of the webpage that is inconsistent with its meaning when considered in its entirety.  Defendants deny the remainder of Paragraph 22.

23.     To the extent the allegations in Paragraph 23 state a conclusion of law they require no answer.  Defendants admit that the Aveeno and Neutrogena Sun Protection Products contain the terms "sunblock" and "waterproof" on the labels, as well as SPF values on their principal display panels.  Neutrogena admits that Neutrogena Sun Protection Products contain the term "sweatproof" on the labels, and CPC admits that Aveeno Sun Protection Products contain the term "Continuous Protection™" or "Continuous Protection®" on the labels. Defendants state that the products' labels speak for themselves, and otherwise deny any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Defendants otherwise deny the remainder of Paragraph 23.

24.     To the extent the allegations in Paragraph 24 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products are labeled with the claim "higher SPF gives more sunburn protection" on the back panels, specifically in the "uses" portion of the drug fact boxes.  CPC states that the products' labels speak for themselves, and otherwise denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 24.

### _The Devastating Effects of Inadequate Sun Protection_

25.     To the extent that the statements in Paragraph 25 of the Complaint refer to the FDA's webpage "The Risks of Tanning," www.http://www.fda.gov/Radiation-EmittingProducts/RadiationEmittingProductsandProcedures/Tanning/ucm116432.htm, Defendants refer to the webpage as the best evidence of its own contents.  Defendants deny the remainder of Paragraph 25.

26.     To the extent that the statements in Paragraph 26 of the Complaint refer to the contents of the Skin Care Foundation's webpage "Skin Cancer Facts," http://www.skincancer.org/skin-cancer-information/skin-cancer-facts, Defendants refer to the webpage as best evidence of its own contents.  Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 26, and therefore deny those allegations.

27.     To the extent that the statements in Paragraph 27 of the Complaint refer to the contents of the Skin Care Foundation's webpage "Skin Cancer Facts," http://www.skincancer.org/skin-cancer-information/skin-cancer-facts, Defendants refer to the webpage as best evidence of its own contents.  Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 27, and therefore deny those allegations.

28.     To the extent that the statements in Paragraph 28 of the Complaint refer to the contents of the Skin Care Foundation's webpage "Skin Cancer Facts," http://www.skincancer.org/skin-cancer-information/skin-cancer-facts, Defendants refer to the webpage as best evidence of its own contents.  Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 28, and therefore deny those allegations

### *The Sun Protection Factor*

29.    Defendants admit that SPF values have been displayed on sun protection products for over 30 years.  Defendants further admit that a SPF value is the ratio of the amount of energy necessary to produce a minimal redness response (minimal erythema dose, MED) on skin covered by a specific amount of sunscreen, compared to the amount of energy necessary to produce the same degree of redness on unprotected skin.  Defendants further admit that all sunscreens must be tested according to certain scientifically accepted methodologies, such as the SPF protocol required by the FDA in 21 C.F.R. §201.327.  Defendants further admit that the FDA requires the resulting SPF value to be displayed on the product's principal display panel.  Defendants deny the remainder of Paragraph 29.

30.    In response to the first and second sentences in Paragraph 30, Defendants admit that consumers are familiar with SPF values and associate higher SPF values with greater sun protection because SPF values have been included on sun protection products for more than 30 years, and otherwise deny the allegations in the first and second sentences of Paragraph 30.  Defendants admit that sunscreens with higher SPFs filter out more UV rays that cause erythema than lower SPF products, but otherwise deny the allegations in the third sentence of paragraph 30.  Defendant deny the remainder of Paragraph 30.

31.    In response to the third sentence of Paragraph 31, Defendants admit that the FDA issued a proposed rule addressing SPF values above 50, *see* 76 Fed. Reg. 35672, the content of which speaks for itself, and deny any characterization that is inconsistent with its meaning when considered in its entirety.  Defendants deny the remainder of Paragraph 31.

32.    CPC admits that it marketed Aveeno Sun Protection Products throughout Florida, and that it distributed these products to some customers in Florida, but it specifically denies the

allegation that it distributed Aveeno Sun Protection Products throughout Florida, or that it sells or sold these products directly to consumers in Florida.  CPC further admits that the Aveeno Sun Protection Products were sold at a variety of retail facilities throughout Florida. CPC denies the remainder of Paragraph 33.

### ***J&J's Deceptive and Misleading Labeling***

33.     To the extent the allegations in Paragraph 5 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products were labeled with SPF values of 70 and 85 on the principal display panel, and were labeled with the claim "higher SPF gives more sunburn protection" on the back panels, specifically in the "uses" portion of the drug facts boxes.  CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 5.

34.     To the extent the allegations in Paragraph 34 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 34.

35.     To the extent the allegations in Paragraph 35 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 35.

36.     To the extent the allegations in Paragraph 36 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 36.

37.     CPC admits that the screen shots provided are accurate depictions of the front labels of the Aveeno Sun Protection Products, the contents of which speaks for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 37.

38.     CPC admits that the back label of the SPF 70 product stated in part that it was "formulated specifically for the face and to provide better, longer-lasting sun protection.  Unlike ordinary sunscreens, this formula combines patented ACTIVE PHOTOBARRIER COMPLEX™, which maintains protection over time against the sun's harmful rays, with natural soy proteins and vitamins A, C, and E to help shield your skin from environmental damage.  This oil-free, non-greasy formula is also hypoallergenic, noncomedogenic and waterproof."  CPC further admits that the back panel of the SPF 85 product stated in part that it was "formulated to provide superior, long-lasting protection against skin damage caused by the sun.  This exclusive formula, which combines ACTIVE PHOTOBARRIER COMPLEX™ to maintain broad spectrum sun protection over time, with natural soy protein and vitamin E, helps shield your skin from environmental damage.  Oil-free and noncomedogenic, it absorbs quickly for a sheer, lightweight finish, and is also hypoallergenic and waterproof."  CPC further admits that the back label of both products stated in part "Directions:  apply generously and evenly before sun exposure [and as needed (on SPF 70 product only)] * Reapply as needed or after towel drying, swimming, [sweating, (on SPF 85 product only)] or perspiring."  CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  In response to footnote 7, CPC further admits that the FDA promulgated a regulation addressing the testing and labeling of sun protection products, *see* 21 C.F.R. § 201.327, and a subsequent rule addressing effective and compliance dates, 77 Fed. Reg. 27591, the contents of which speak for themselves, and denies any characterization that is inconsistent with their meaning when considered in their entirety.  CPC further denies the remainder of Paragraph 38.

39.     CPC admits that the Aveeno Sun Protection Products were labeled with the claim "higher SPF gives more sunburn protection" on the back panels, specifically in the "uses" portion of the drug facts boxes.  CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 39.

40.     To the extent the allegations in Paragraph 40 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products were labeled with SPF values of 70 and 85 on the principal display panel, and were labeled with the claim "higher SPF gives more sunburn protection" on the back panels, specifically in the "uses" portion of the drug fact boxes.  CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of  Paragraph 40.

41.     To the extent the allegations in Paragraph 41 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products' labels contained the term "Sunblock."  CPC further states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC further admits that the FDA promulgated a regulation addressing the testing and labeling of sun protection products, *see* 21 C.F.R. § 201.327; 76 Fed. Reg. 35620, the contents of which speak for themselves, and denies any characterization that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 41.

42.     To the extent the allegations in Paragraph 42 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products' labels contained the term "waterproof."  CPC further states that the products' labels speak for themselves, and denies

any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC further admits that the FDA promulgated a regulation addressing the testing and labeling of sun protection products, *see* 21 C.F.R. § 201.327; 76 Fed. Reg. 35620, the contents of which speak for themselves, and denies any characterization that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 41.

43.     To the extent the allegations in Paragraph 43 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products' labels contained the terms "Continuous Protection®" [SPF 85 product] or "Continuous Protection™" [SPF 70 product].  CPC further states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC denies the remainder of Paragraph 43.

44.     In response to the first sentence in Paragraph 44, CPC denies that there are only "two material differences" between the Aveeno Sun Protection Products and the unspecified Aveeno SPF 55 product, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 44 regarding (i) the retail prices of the Aveeno Sun Protection Products, the unspecified Aveeno SPF 55 product, or the unspecified "comparable products with lower SPF values," and (ii) the active ingredients of the unspecified Aveeno SPF 55 product, and therefore denies the allegations in these sentences.  CPC denies the remainder of Paragraph 44.

### *Neutrogena's Deceptive and Misleading Labeling*

45.     Neutrogena admits that it manufactures, markets, and distributes the Neutrogena "Ultra Sheer Dry Touch," "Pure & Free Baby," and "Sensitive Skin" sun protection product lines, including the Ultra Sheer Dry Touch Sunblock SPF 55 and SPF 85 products, the Pure &

Free Baby Sunblock Lotion SPF 60+ product, and the Sensitive Skin Sunblock Lotion SPF60+ product that are at issue in this matter. Neutrogena denies that it sells or sold any of the Neutrogena Sun Protection Products directly to consumers in Florida, but otherwise admits that the products are sold by retailers in a variety of stores in Florida.

46.     To the extent the allegations in Paragraph 46 state a conclusion of law they require no answer. Neutrogena denies the remainder of Paragraph 46.

47.     To the extent the allegations in Paragraph 47 state a conclusion of law they require no answer. Neutrogena denies the remainder of Paragraph 47.

48.     To the extent the allegations in Paragraph 48 state a conclusion of law they require no answer. Neutrogena denies the remainder of Paragraph 48.

49.     Neutrogena admits that the screen shots provided are accurate depictions of the front labels of the Neutrogena Sun Protection Products, the contents of which speaks for themselves. Neutrogena denies the remainder of Paragraph 49.

50.     Neutrogena admits that the back labels of the Neutrogena Sun Protection products contained the terms "waterproof" and "sweatproof." Neutrogena further admits that the back labels of the Pure & Free Baby Sunblock Lotion SPF 60+ and the Sensitive Skin Sunblock Lotion SPF 60+product stated "Directions: . . . Apply liberally and evenly before sun exposure. Ensure complete coverage. Reapply as needed or after swimming, perspiring, towel drying, or vigorous activity." Neutrogena further admits that the back labels of the Ultra Sheer Dry Touch Sunblock Lotion SPF 55 and SPF 85 stated: "Directions: Apply liberally on body 15-20 minutes before sun exposure. Re-apply frequently to maintain protection, especially after sweating, swimming, towel drying or extended sun exposure." Neutrogena further states that the products' labels speak for themselves, and denies any characterization of the labels that is

inconsistent with their meaning when considered in their entirety.  In response to footnote 9, Neutrogena further admits that the FDA promulgated a regulation addressing the testing and labeling of sun protection products, *see* 21 C.F.R. § 201.327, and a subsequent rule addressing effective and compliance dates, 77 Fed. Reg. 27591, the contents of which speak for themselves, and denies any characterization that is inconsistent with their meaning when considered in their entirety.  Neutrogena denies the remainder of Paragraph 50.

51.     To the extent the allegations in Paragraph 51 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products were labeled with SPF values of 55, 60+ and 85 on the principal display panels and back labels.  Neutrogena further states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena denies the remainder of Paragraph 51.

52.     To the extent the allegations in Paragraph 52 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products' labels contained the term "Sunblock."  Neutrogena further states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena further admits that the FDA promulgated a regulation addressing the testing and labeling of sun protection products, *see* 21 C.F.R. § 201.327; 76 Fed. Reg. 35620, the contents of which speak for themselves, and denies any characterization that is inconsistent with their meaning when considered in their entirety. Neutrogena denies the remainder of Paragraph 52.

53.     To the extent the allegations in Paragraph 53 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products' labels

contained the terms "waterproof" and "sweatproof."  Neutrogena further states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena further admits that the FDA promulgated a regulation addressing the testing and labeling of sun protection products, *see* 21 C.F.R. § 201.327; 76 Fed. Reg. 35620, the contents of which speak for themselves, and denies any characterization that is inconsistent with their meaning when considered in their entirety. Neutrogena denies the remainder of Paragraph 53.

54.      In response to the first sentence in Paragraph 54, Neutrogena denies that there are only "two material differences" between the Neutrogena Sun Protection Products and the unspecified comparable products with SPF values of 50, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 54 regarding the retail prices of the Neutrogena Sun Protection Products and the unspecified comparable products with an SPF value of 50, and therefore denies those allegations. Defendant further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 54 regarding retail prices of the Neutrogena Sun Protection Products, the unspecified other Neutrogena SPF 50 sunscreen products, or unspecified comparable products with lower SPF values, and therefore denies those allegations.   Neutrogena denies the remainder of Paragraph 54.

### ***The Impact of J&J's Deception***

55.      CPC admits that it manufactures and distributes Aveeno Sun Protection Products and possesses knowledge about the Aveeno Sun Protection Products' ingredients and scientific test results for certain claims made regarding the products.  CPC denies the remainder of Paragraph 55.

56.     To the extent the allegations in Paragraph 56 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 56.

57.     To the extent the allegations in Paragraph 57 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products were labeled with the terms "Sunblock," "Waterproof," and "Continuous Protection™" [SPF 70] or "Continuous Protection®" [SPF 85].  CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC further denies the remainder of  Paragraph 57.

58.     To the extent the allegations in Paragraph 58 state a conclusion of law they require no answer.  CPC admits that the Aveeno Sun Protection Products were labeled with the terms "Sunblock," "Waterproof," and "Continuous Protection™" [SPF 70 Face] or "Continuous Protection®" [SPF 85], and were labeled with SPF values of 70 and 85.  CPC further admits that the back label of both products stated "Directions:  apply generously and evenly before sun exposure [and as needed (SPF 70 only)] * Reapply as needed or after towel drying, swimming, [sweating (SPF 85 only)], or perspiring."   CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC further denies the remainder of Paragraph 58.

59.     CPC admits that every Aveeno Sun Protection Product's label contained an SPF value of 70 or 85, the sentence "higher SPF gives more sunburn protection," and the terms "Sunblock," "waterproof," "Continuous Protection™" [SPF 70 Face] or "Continuous Protection®" [SPF 85]."  CPC states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC lacks information or knowledge sufficient to form a belief as to whether and to

what extent any given consumer was "exposed to" any product labeling, and therefore denies those allegations.  CPC denies the remainder of Paragraph 59.

60.      To the extent the allegations in Paragraph 60 state a conclusion of law they require no answer.  CPC denies the remainder of Paragraph 60.

61.      To the extent the allegations in Paragraph 61 state a conclusion of law they require no answer.  CPC states that the labels for the Aveeno Sun Protection Products speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  CPC further states that it lacks information or knowledge sufficient to form a belief as to whether and to what extent any given consumer purchased and applied Aveeno Sun Protection Product(s) or was "exposed to" any product labeling, and therefore denies those allegations.  CPC denies the remainder of Paragraph 68.

### *The Impact of Neutrogena's Deception*

62.      Neutrogena admits that it manufactured and distributed Neutrogena Sun Protection Products and possesses knowledge about the Neutrogena Sun Protection Products' ingredients and scientific test results for certain claims made regarding the products.  Neutrogena denies the remainder of Paragraph 62.

63.      To the extent the allegations in Paragraph 63 state a conclusion of law they require no answer.  Neutrogena denies the remainder of Paragraph 63.

64.      To the extent the allegations in Paragraph 64 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products were labeled with the terms "Sunblock," "Waterproof," and "Sweatproof."   Neutrogena states that the products' labels speak for themselves, and denies any characterization of the labels that is

inconsistent with their meaning when considered in their entirety.  Neutrogena further denies the remainder of  Paragraph 64.

65.     To the extent the allegations in Paragraph 65 state a conclusion of law they require no answer.  Neutrogena admits that the Neutrogena Sun Protection Products were labeled with the terms "Sunblock," "Waterproof," and "Sweatproof," and were labeled with SPF values of 55, 60+ and 85.  Neutrogena further admits that the back labels of the Ultra Sheer Dry Touch Sunblock Lotion SPF 55 and SPF 85 stated:  "Directions:  Apply liberally on body 15-20 minutes before sun exposure.  Re-apply frequently to maintain protection, especially after sweating, swimming, towel drying or extended sun exposure."  Neutrogena further admits that the back label of both the Pure & Free Sunblock Lotion SPF 60+ and Sensitive Skin Sunblock Lotion SPF 60+ products stated:  "Directions: . . . Apply liberally and evenly before sun exposure.  Ensure complete coverage.  Reapply as needed or after swimming, perspiring, towel drying, or vigorous activity."  Neutrogena states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena further denies the remainder of  Paragraph 65.

66.     Neutrogena admits that every Neutrogena Sun Protection Product's label contained an SPF value of 55, 60+, or 85, and terms "Sunblock" and "waterproof."  Neutrogena further admits that every Ultra Sheer Dry Touch SPF 55 and SPF 85 Lotion product label contained the term "Sweatproof."   Neutrogena states that the products' labels speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena lacks information or knowledge sufficient to form a belief as to whether and to what extent any given consumer was "exposed to" any product

labeling, and therefore denies those allegations.  Neutrogena denies the remainder of Paragraph 66.

67.     To the extent the allegations in Paragraph 67 state a conclusion of law they require no answer.  Neutrogena denies the remainder of Paragraph 67.

68.     To the extent the allegations in Paragraph 68 state a conclusion of law they require no answer.  Neutrogena states that the labels for the Neutrogena Sun Protection Products speak for themselves, and denies any characterization of the labels that is inconsistent with their meaning when considered in their entirety.  Neutrogena further states that it lacks information or knowledge sufficient to form a belief as to whether and to what extent any given consumer purchased and applied Neutrogena Sun Protection Product(s) or was "exposed to" any product labeling, and therefore denies those allegations.  Neutrogena denies the remainder of Paragraph 68.

**PLAINTIFF'S PURCHASE OF DEFENDANTS' PRODUCTS**

69.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69, and therefore deny those allegations.

70.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70, and therefore deny those allegations.

71.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71, and therefore deny those allegations.

72.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 72, and therefore deny those allegations.

73.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 73, and therefore deny those allegations.

## CLASS REPRESENTATION ALLEGATIONS

### Class Definition

74.     Defendants incorporate their responses to the foregoing paragraphs as though set forth fully herein.

75.     Defendants admit that Plaintiff purports to bring this action as a class action on behalf of the proposed class identified in Paragraph 76.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

76.     Defendants admit that Plaintiff purports to bring this action as a class action on behalf of the proposed class identified in Paragraph 76.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

77.     Paragraph 77 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 77 purports to contain factual allegations requiring a response, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and fourth sentences of Paragraph 77 regarding the number and geographic location of the putative class members, and therefore deny those allegations.  Defendants deny the remainder of Paragraph 77.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

78.     Paragraph 78 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 78 purports to contain factual allegations requiring a response, Defendants deny the allegations in Paragraph 78, including its

subparts.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

79.     Paragraph 79 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 79 purports to contain factual allegations requiring a response, Defendants deny the allegations in Paragraph 79.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

80.     Paragraph 80 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 80 purports to contain factual allegations requiring a response, Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in Paragraph 80, and therefore deny those allegations. Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

81.     Paragraph 81 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 81 purports to contain factual allegations requiring a response, Defendants deny the allegations in Paragraph 81.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

82.     Paragraph 82 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 82 purports to contain factual allegations requiring a response, Defendants deny the allegations in Paragraph 82, including its subparts.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

83.     Paragraph 83 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Defendants.  To the extent Paragraph 83 purports to contain factual allegations requiring a response, Defendants deny the allegations in Paragraph 83, including its subparts.  Defendants specifically deny that the requisites for class action are present and that this action could properly proceed as a class action.

## CAUSES OF ACTION

### COUNT I

**(Florida Deceptive and Unfair Trade Practices Act) ("FDUTPA" or "Act")**
**(against Defendant J&J)**

84.     CPC incorporates the responses to the foregoing paragraphs as though set forth fully herein.

85.     CPC admits that Plaintiff purports to bring this cause of action on behalf of herself and the proposed class identified in Paragraph 76.  CPC denies any implication contained in Paragraph 85 that this action may be maintained on behalf of a purported class.

86.     Paragraph 86 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent Paragraph 86 purports to contain factual allegations requiring a response, CPC denies the allegations in Paragraph 86 and any implication contained therein that this action may be maintained on behalf of a purported class.

87.     Paragraph 87 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 87, and to the extent that Paragraph 87 purports to summarize the legislative purpose of FDUTPA, CPC states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.  CPC denies the remainder of Paragraph 87.

88.     Paragraph 88 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 88, and to the extent that Paragraph 88 purports to cite to FDUTPA, Fla. Stat. § 501.201, CPC states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.  CPC denies the remainder of Paragraph 88.

89.     Paragraph 89 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 89, CPC denies the allegations in Paragraph 89.

90.     Paragraph 90 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 90, CPC denies the allegations in Paragraph 90, including each and every subpart.

91.     Paragraph 91 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 91, CPC denies the allegations in Paragraph 91.

92.     Paragraph 92 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 92, CPC denies the allegations in Paragraph 92.

93.     Paragraph 93 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 93, CPC denies the allegations in Paragraph 93.

94.     Paragraph 94 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is required to Paragraph 94, CPC denies the allegations in Paragraph 94.

95.     Paragraph 95 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is necessary, and to the extent that Paragraph 95 purports to cite from FDUTPA, Fla. § 501.211(1), CPC states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.   CPC denies the allegations in Paragraph 95.

96.     Paragraph 96 sets forth Plaintiff's argument and legal conclusions, and does not require a response from CPC.  To the extent any response is necessary, and to the extent that Paragraph 96 purports to cite from FDUTPA, Fla. § 501.211, CPC states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.   CPC denies the allegations in Paragraph 96.

## CAUSES OF ACTION

## COUNT II

**(Florida Deceptive and Unfair Trade Practices Act) ("FDUTPA" or "Act")**
**(against Defendant Neutrogena)**

97.     Neutrogena incorporates the responses to the foregoing paragraphs as though set forth fully herein.

98.     Neutrogena admits that Plaintiff purports to bring this cause of action on behalf of herself and the proposed class identified in Paragraph 76.  Neutrogena denies any implication contained in Paragraph 98 that this action may be maintained on behalf of a purported class.

99.     Paragraph 99 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent Paragraph 99 purports to contain factual allegations requiring a response, Neutrogena denies the allegations in Paragraph 99 and any implication contained therein that this action may be maintained on behalf of a purported class.

100.     Paragraph 100 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 100, and to the extent that Paragraph 100 purports to summarize the legislative purpose of FDUTPA, Neutrogena states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.  Neutrogena denies the remainder of Paragraph 100.

101.     Paragraph 101 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required, and to the extent that Paragraph 101 purports to cite to FDUTPA, Fla. Stat. § 501.201, Neutrogena states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.  Neutrogena denies the remainder of Paragraph 101.

102.     Paragraph 102 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 102, Neutrogena denies the allegations in Paragraph 102.

103.     Paragraph 103 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 103, Neutrogena denies the allegations in Paragraph 103, including each and every subpart.

104.     Paragraph 104 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 104, Neutrogena denies the allegations in Paragraph 104.

105.     Paragraph 105 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 105, Neutrogena denies the allegations in Paragraph 105.

106.     Paragraph 106 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 106, Neutrogena denies the allegations in Paragraph 106.

107.     Paragraph 107 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is required to Paragraph 107, Neutrogena denies the allegations in Paragraph 107.

108.     Paragraph 108 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is necessary, and to the extent that Paragraph 108 purports to cite from FDUTPA, Fla. § 501.211(1), Neutrogena states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.   Neutrogena denies the allegations in Paragraph 108.

109.     Neutrogena denies the allegations in Paragraph 109.

110.     Paragraph 110 sets forth Plaintiff's argument and legal conclusions, and does not require a response from Neutrogena.  To the extent any response is necessary, and to the extent that Paragraph 110 purports to cite from FDUTPA, Fla. § 501.211, Neutrogena states that the Act speaks for itself and denies any characterization that is inconsistent with its meaning when considered in its entirety.   Neutrogena denies the allegations in Paragraph 110.

## PRAYER FOR RELIEF

To the extent that any response is required to Plaintiff's prayer for relief and judgment, Defendants deny that Plaintiff and/or the putative class is entitled to recover any relief requested in Plaintiff's prayer or any relief whatsoever.

## DEMAND FOR JURY TRIAL

In response to Plaintiff's jury demand, Defendants demand a jury trial in this action for all issues so triable.

27

## AFFIRMATIVE DEFENSES

Defendants sets forth below their affirmative defenses.  By setting forth these affirmative defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to the Plaintiff or the putative class members.   Moreover, nothing stated herein is intended, or should be construed, as an acknowledgement that any particular issue or subject matter necessarily is relevant to Plaintiff's allegations.

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state any claim against Defendants upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, because they suffered no injury and/or incurred no damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert the claims herein, in whole or in part, or to act as a class representative.

### FOURTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because any alleged injury to Plaintiff or the putative class was not directly or proximately caused by Defendants' actions.

### FIFTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because Plaintiff and the members of the putative class did not rely on any alleged statement or omission by Defendants.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, based on principles of equity.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff and the putative class are barred from recovery by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

By their actions and conduct, Plaintiff and the putative class have waived their right to sue Defendants for any relief sought and/or their claims are barred, in whole or in part, by the doctrine of estoppel.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff and the putative class are barred, in whole or in part, from recovery by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to, Fla. Stat. § 95.11(3)(f), and Plaintiff does not sufficiently allege that the discovery rule applies or the limitations periods were tolled.

## ELEVENTH AFFIRMATIVE DEFENSE

The Second Complaint is barred, in whole or in part, because the alleged injuries or damages complained of by Plaintiff and/or members of the putative class, if there actually were any, were caused by the acts or omissions of Plaintiff and/or third parties over whom Defendants had no control or right of control.

## TWELFTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because the alleged injuries or damage complained of by Plaintiff and/or members of the putative class, if there actually were any, were caused by the intervening and superseding events and/or actions of persons or entities other than Defendants.

### THIRTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff or the putative class suffered any damages, she or they failed to mitigate them.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff and the putative class are not entitled to the relief sought, in whole or in part, because an adequate remedy at law exists.

### FIFTEENTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because Defendants' conduct was at all times justified.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's clams are barred, in whole or in part, by the First Amendment of the United States Constitution, and similar provisions in the Constitution of the State of Florida, which protect, among other things, Defendants' right to promote and advertise its products.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are precluded, in whole or in part, because through actions or omissions, they have expressly or implicitly consented to and ratified the conduct upon which the claims are based.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, and/or other similar doctrines.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, because at all times at issue herein Defendants' conduct was in good faith.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendants' business practices are not unfair, unlawful, or likely to mislead a reasonable consumer.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, because Defendants' business practices are not unfair, unlawful, or likely to mislead because its conduct falls within a safe harbor created by law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, to the extent that Plaintiff and/or the putative class consented to or approved of all acts and omissions about which they now complain.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, by release of the asserted claims.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because any representations or statements alleged to have been made by Defendants were true and accurate at the time made and/or otherwise were made in good faith and with a reasonable belief as to their validity and accuracy and with reasonable belief that all of Defendants' conduct was lawful.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, by the Due Process Clauses of the Constitutions of the United States and the State of Florida, and by the Due Process Clauses of any other Constitutions the Court may deem applicable.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because Plaintiff and/or the putative class seek relief to which they are not entitled.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, because Plaintiff's claims are frivolous, unreasonable, groundless, or brought in bad faith, and accordingly Defendants should recover all costs and attorneys' fees incurred herein.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, by the doctrine of federal preemption including, but not limited to, preemption by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., and/or barred by the primary jurisdiction doctrine.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, to the extent that it is based on non-actionable puffing.

## THIRTIETH AFFIRMATIVE DEFENSE

The Amended Complaint is barred, in whole or in part, by the prior substantiation doctrine.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Defendants assert that their products complied with all applicable federal and state statutes and regulations.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Defendants assert that their products were labeled in a manner conforming with the generally recognized state of scientific and technological knowledge available at the time it was placed in the market.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Defendants owed no duty to disclose to Plaintiff or the putative class the information allegedly omitted.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class's claims are barred, in whole or in part, because the damages sought are too speculative and remote.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Defendants are informed and believe and on such basis allege that they may have additional defenses available which are not fully known and of which Defendants are not presently aware.  Defendants reserve the right to raise additional affirmative defenses as may be established during discovery and by the evidence in this case.


Defendants will rely on all defenses that may become available during discovery or trial.

WHEREFORE, Defendants pray that the Court determine and adjudge:

      a.        that this suit cannot be maintained as a class action;

      b.        that the Amended Complaint be dismissed on the merits;

      c.        that Plaintiff take nothing by the Amended Complaint;

d.     that Defendants be awarded their costs, disbursements, reasonably attorneys' fees, and expenses incurred herein; and

e.     that Defendants be awarded such other and further relief as the Court may deem proper.

Respectfully submitted this 2nd day of October, 2014.

HUNTON & WILLIAMS LLP


By: /s/ Jordi C. Martinez-Cid
Samuel A. Danon, FBN 0892671
Abigail M. Lyle, FBN 41384
Jordi C. Martinez-Cid, FBN 100566
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500; Fax: 2460
Email: sdanon, alyle or
j-martinez-cid@hunton.com

Richard B. Goetz (*Pro Hac Vice* to be filed)
Amy Laurendeau (*Pro Hac Vice*)
Jaclyn Blankenship (*Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6400; Fax: 6407
Email: rgoetz, alaurendeau or
jblankenship@omm.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel for Plaintiff via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Jordi C. Martinez-Cid
Jordi C. Martinez-Cid