United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Vanessa Lombardo, Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 13-60536-Civ-Scola |
| ) | |
| Johnson & Johnson Consumer ) | |
| Companies, Inc., *et al.*, Defendants ) | |

**Order on Defendants' Motion for Summary Judgment**

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 83.) Plaintiff responded in opposition, (ECF No. 102), and Defendants replied. (ECF No. 110.) After reviewing the record, the parties' arguments, and the relevant legal authorities, the Court grants Defendants' Motion for Summary Judgment.

1. **Factual and Procedural Background**

This case concerns the advertising and labeling of sunscreen products with sun protection factor ("SPF") designations greater than 50, manufactured by Defendants Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") and Neutrogena Corporation ("Neutrogena"). Johnson & Johnson distributes, markets, and sells Aveeno Active Naturals Continuous Protection Waterproof Sunblock Lotion SPF 70 and SPF 85 (the "Aveeno Sunscreens") and Neutrogena distributes, markets, and sells Ultra Sheer Dry-Touch Waterproof Sunblock SPF 55 and SPF 85, Pure & Free Baby Waterproof Sunblock Lotion SPF 60+, and Sensitive Skin Waterproof Sunblock Lotion SPF 60+ (the "Neutrogena Sunscreens") (collectively, the "Products").

Plaintiff Vanessa Lombardo alleges that Defendants advertised that their Products provided additional clinical benefit over comparable products with SPF designations less than 50, and charged premium prices accordingly, even though higher SPF sunscreens do not provide any meaningful additional benefit. In other words, while there is a significant clinical benefit from switching from SPF 10 to SPF 40, there is allegedly little to no additional clinical benefit from switching from SPF 55 to SPF 85. Lombardo claims that as a result of Defendants' deceptive labeling, she and members of the putative Florida class purchased the Products at premium prices and that the Products did not perform as advertised. Lombardo further alleges that the labeling terms "waterproof" and "sunblock" on all of the Products, the term

"continuous" protection" on Aveeno Sunscreens, and the term "sweatproof protection" on the Neutrogena Sunscreens were false and misleading.[1]

Lombardo purchased each of the six Products that form the basis of her lawsuit during a single trip to a Walmart in Fort Meyers, Florida. (Statement of Undisputed Facts ("SUF") ¶ 30.)[2]  Although Lombardo does not recall the exact date she purchased the Products, she testified that she purchased them immediately prior to a boating trip in the spring of 2012, within the year prior to filing her initial Complaint in January of 2013. (*Id.* ¶¶ 31–36.) Lombardo does not recall the prices she paid for any of the Products, whether the Products were comparably priced to one another, or how the Products' prices compared to any other lower SPF sunscreens available at that Walmart. (*Id.* ¶¶ 63–66.) Lombardo does not have any receipts for the Products' purchase. (*Id.* ¶ 67.) Lombardo did not purchase any of the Products prior to her purchase for the boating trip, nor did she purchase any Neutrogena or Aveeno Sunscreens after the boat trip purchase. (*Id.* ¶¶ 37, 44.)

Regarding the Products and FDA regulations, the parties stipulate to the following facts. Each of the six Products displays an SPF number, ranging from 55 to 85+, prominently on its front label. (*Id.* ¶¶ 4, 5.) The back label of the two Aveeno Products state that "higher SPF gives more sunburn protection." (*Id.* ¶ 6.) The FDA's Final Rule requires that a sunscreen's SPF, as determined by the prescribed testing, be prominently displayed in the product's

---

[1] The United States Food and Drug Administration ("FDA") recently promulgated labeling and testing requirements for manufacturers, who were given until December 17, 2012 to comply with the requirements. Labeling and Effective Testing; Sunscreen Drug Products for Over-the-Counter Human Use; Delay of Compliance Dates, 77 Fed. Reg. 27,591 (May 11, 2012). The Final Rule prohibits labels from claiming that a sunscreen is "sunblock," "sweatproof," or "waterproof," or that a sunscreen provides "continuous" protection. Labeling and Effective Testing; Sunscreen Drug Products for Over-the-Counter Human Use, 76 Fed. Reg. 35,628 (Jun. 17, 2011). However, the FDA gave manufacturers time to comply with the Final Rule, and explicitly noted that "sunscreen products which are already distributed by the effective date of the final rule [i.e., June 17, 2011] would not be expected to be relabeled or retested in conformity with the final rule conditions." Labeling and Effective Testing; Sunscreen Drug Products for Over-the-Counter Human Use, 76 Fed. Reg. 35,624.

[2] The undisputed material facts of this case are taken from Defendants' Statement of Undisputed Facts, ("DSUF," ECF No. 84), and Plaintiff's Statement of Material Facts in Opposition. ("PSUF," ECF No. 101.)

principal display panel. (*Id.* ¶ 16.) The Final Rule does *not* require any commentary about the significance of the SPF value or comparisons between the clinical efficacy of products with lower and higher SPF values. (*Id.* ¶ 17.) The Final Rule states the claim that "[h]igher SPF products give more sun protection, but are not intended to extend the time spent in the sun" is "truthful and nonmisleading," and the FDA expressly permits inclusion of this statement in sunscreen labeling. (*Id.* ¶ 22.) However, Lombardo contends, this statement does not apply to sunscreen products with an SPF greater than 50. (PSUF ¶ 22, ECF No. 101.) Finally, Defendants do not set or "control" the retail pricing of their sunscreen products; retailers set prices. (SUF ¶ 75.) Lombardo disagrees as to the term "controls" in light of the suggested retail prices ("SRPs") Defendants provided to retailers. (PSUF ¶ 75, ECF No. 101.)

Lombardo filed her initial complaint in the Florida Circuit Court for Broward County on January 24, 2013. (ECF No. 1.) Defendants removed the action to this Court. (*Id.*) Defendants subsequently moved to dismiss Plaintiff's Complaint for failure to state a claim upon which the Court could grant relief. (ECF No. 7.) The Court granted Defendants' Motion in part, dismissing as preempted Lombardo's claims regarding products with the terms "sunblock," "waterproof," "sweatproof," "continuous protection" on their labels that (1) were sold on or after June 17, 2011 and (2) were labeled before December 17, 2012. (ECF. No. 46). The Court also dismissed as preempted Lombardo's claims exclusively challenging the SPF value on labels for products that (1) were sold on or after June 17, 2011 and (2) were labeled before December 17, 2012. Lombardo subsequently filed an Amended Complaint. (ECF No. 48.) Defendants now move for Summary Judgment. (ECF No. 83.)

## 2. Legal Standards
### A. Summary Judgment

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it could affect the outcome of the case pursuant to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden to demonstrate that there are no genuine issues of material fact. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### B. Scope and Purpose of FDUTPA

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." Fla. Stat. § 501.202(2). Courts must liberally construe FDUPTA. *See, e.g., Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("While the Legislature does not define what 'an unfair or deceptive act' is, it has mandated that FDUTPA is to be liberally construed.").

A consumer claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Virgilio v. Ryland Grp., Inc.,* 680 F.3d 1329, 1338 n.25 (11th Cir. 2012); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006); *Macias v. HBC of Fla., Inc.,* 694 So. 2d 88, 90 (Fla. 3d DCA 1997). An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal citations omitted). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (internal citations omitted).

### 3. Analysis
#### A. Federal Preemption

On December 19, 2013, the Court entered an Order granting in part Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 46.) The Order dismissed as preempted:

- Plaintiff's claims regarding products with the terms "sunblock," "waterproof," "sweatproof," "continuous protection" on their labels that (1) were sold on or after June 17, 2011 and (2) were labeled before December 17, 2012; and

- Plaintiff's claims exclusively challenging the SPF value on labels for products that (1) were sold on or after June 17, 2011 and (2) were labeled before December 17, 2012.

(*Id.*) The Court did not dismiss any claims regarding products sold *before* June 17, 2011, as "[t]he parties' briefs did not address whether a state-law claim is preempted when that claim involves conduct that occurred before the enactment of a federal law regulating that same conduct." (*Id.*)

Lombardo subsequently filed an Amended Complaint in which she sought to represent a putative class of Florida residents who purchased Johnson & Johnson and Neutrogena products between 2009 and June 16, 2011. (*See* Am. Compl. ¶76, ECF No. 48.) Lombardo alleged that she "purchased and applied [the Products] during the class period." (*Id.* ¶ 68). Accepting that fact as true, as is required at the motion to dismiss stage, the Court denied Defendants' Motion to Dismiss the aforementioned claims as preempted. Because the Court accepted that Lombardo purchased the Products before June 17, 2011, the Court held that her allegations fell outside the scope of its previous preemption ruling. However, Defendants have since produced undisputed evidence that Lombardo purchased the six Products in the spring of 2012 immediately before her boating trip. (SUF ¶¶ 30, 34–39, 44.) Accordingly, it is clear that Lombardo's "sunblock," "waterproof," "sweatproof," and "continuous protection" label claims and claims exclusively challenging the values of the SPF labels are preempted. (*See* ECF No. 46.)

The Court's December 2013 Order did not dismiss as preempted Lombardo's FDUTPA claims alleging that Defendants combined high SPF values with "statements of increased effectiveness and higher price" in a way that deceptively and unfairly misled consumers. (*Id.*) But, as discussed below, Lombardo does not provide evidence to raise a genuine issue for trial for this claim.

### B. Remaining FDUTPA Claims
#### i. *Deceptive Labeling*

In dismissing all claims "*exclusively challenging the SPF value on labels* for products that (1) were sold on or after June 17, 2011 and (2) were labeled before December 17, 2012," the Court reasoned that:

> The Final Rule promulgated by the FDA in June of 2011—and currently in effect—does not establish a maximum SPF value . . . In her Complaint, Lombardo claims that the SPF values were "deceptively described." Lombardo does not argue that the SPF values are inaccurate. Instead, she claims that the SPF values themselves are misleading. To the extent that Lombardo challenges the SPF values on the labels themselves, those claims are preempted for all products sold on or after June 17, 2011 and labeled before December 17, 2012. Inclusion of an appropriately derived SPF value on a sunscreen label is an FDA requirement, and Lombardo may not impose a ceiling on SPF values.

(*Id.*) Therefore, to maintain a cause of action against Defendants, Lombardo must proffer evidence, *beyond the SPF labels themselves*, that Defendants conducted unfair or deceptive practices. Lombardo attempts to carry this burden by alleging that Defendants combined high SPF values with "statements of increased effectiveness and higher price" in a way that deceptively and unfairly misled consumers.

Yet Lombardo does not point to a single misleading statement, omission, or device that was "likely to mislead consumers acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt. Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (internal quotations and citations omitted). Lombardo offers nothing more than the terms "sunblock," "waterproof," "sweatproof," and "continuous protection," which—as discussed above—are preempted and cannot be evidence of deception.

Lombardo also argues that it is disputed whether the statement, "higher SPF gives more sunburn protection," appearing on two of the Aveeno Products labels, constitutes a "misrepresentation" for the purposes of FDUPTA. The FDA's Final Rule forecloses this dispute: it says that the statement "[h]igher SPF products give more sun protection, but are not intended to extend the time spent in the sun" is "truthful and nonmisleading." Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use ("Final Rule"), 76 Fed. Reg. 35,620 (June 17, 2011). Moreover, the Final Rule expressly permits inclusion of this statement on sunscreen labeling. *Id.* Lombardo argues that this pronouncement does not apply to 50+ SPF sunscreen products, but she does not point to any language in the Final Rule

that limits the FDA's findings to sunscreens with SPF levels less than 50. Indeed, the Court can find none. *See generally id.*

What remains of Lombardo's argument is a general theory that consumers do not fully understand the SPF rating system. To support this theory, Lombardo provides expert testimony about consumers' perceptions of the SPF system and consumers' willingness to pay more for higher SPF products. For example, based on economic regression analysis and Defendants' own market research, Plaintiff's expert, Colin Weir, concludes that "SPF level does impact the market price for the Products." (Decl. of Colin Weir ("Weir Decl.") ¶ 60, ECF No. 102, Ex. B.) Another expert, Dr. Barbara Gilchrest, asserts that consumers have paid premiums for ultra-high SPF products "as a result of 'SPF wars' among sunscreen manufacturers who wished to garner greater market share and dominate the competition." (Decl. of Barbara A. Gilchrest ("Gilchrest Decl.") at 4, ECF No. 102, Ex. A.) Finally, Dr. Thomas J. Maronick concludes that that (1) SPF level and protection from the sun are very important factors in consumers' decisions as to which sunscreen to buy; (2) consumers don't know the relative sun protection effectiveness of sunscreens, particularly those with higher SPF values; and (3) the SPF value on Aveeno and Neutrogena packages were significant factors in consumers' perceptions of the brands and on consumers' "explanations" as to why brands with higher SPF values may be priced higher. [3] (Decl. of Thomas J. Maronick ("Maronick Decl.") at 15, ECF No. 102, Ex. C.)

These expert conclusions address the SPF system itself—which the FDA has not abandoned—and do not suggest that Defendants deceived customers in any way. As the Court noted in its December 2013 Order, "[i]nclusion of an appropriately derived SPF value on a sunscreen label is an FDA requirement." (ECF No. 46.) Consumers' understanding of that labelling system is beyond the scope of Defendants' conduct, so long as Defendants accurately represent the SPF levels of sunscreen products and do not mischaracterize the clinical benefits. Lombardo does not argue that Defendants mislabel the SPF values of their Products—for example, by labeling an SPF 85 sunscreen as SPF 40—and, as discussed above, Lombardo does not point to statements that mislead or mischaracterize the clinical benefit of varying SPF levels. Finally, all parties stipulate that the Final Rule does *not* require any commentary about the significance of the SPF value or comparisons between the clinical efficacy of

---

[3] Dr. Maronick also reaches a conclusion about consumers' perceptions of the labeling term "waterproof." For the reasons discussed above, all claims regarding the term "waterproof" are preempted and Dr. Maronick's finding on the subject is not relevant here.

products with lower and higher SPF values.  (SUF ¶ 17.)

### ii. *Deceptive Pricing*

Lombardo's price-premium argument—i.e., that increasing prices misleads consumers into believing that increasing SPF products provide proportionally increasing clinical benefits—is also unavailing.  First and foremost, Lombardo does not establish a genuine issue over the fact that she actually paid a premium for the Products.  Lombardo testified that she has no receipts showing the prices of the six Products she purchases.  (SUF ¶ 67.)  She also testified that she does not recall the purchase prices, how the prices compared to lower SPF sunscreen products, or whether the Neutrogena SPF 85+ sunscreen product cost more than the SPF 55 sunscreen product.  (*Id.* ¶¶ 63–66.)  Lombardo argues that Colin Weir's regression analysis, confirming that SPF is a factor in product pricing, demonstrates that she paid premium prices for the Products in lieu of cheaper prices for lower SPF products.  However, as Defendants' expert notes, the *actual* retail prices of the Products are not linear or uniform.  (Decl. of Keith R. Ugone ("Ugone Decl.") ¶ 18, ECF No. 113, Ex. A.)  Retail prices can vary within a range of almost six dollars based on geographic area, channels of distribution, retailers within the channels of distribution, and promotional pricing.  (*Id.* at 9, Table 2.)  For example, in Florida, an SPF 55 Neutrogena Ultra-Sheer Dry-Touch Waterproof Sunblock ranges from $7.95 to $11.35, while the same sunscreen with an SPF of 30 ranges from $6.30 to $10.20.  (*Id.*)  Therefore, in certain instances, the SPF 55 can cost almost three dollars less than the SPF 30.  Plaintiff presents no evidence—for example, personal receipts or Walmart pricing or promotional records—that establishes her purchases within those specific ranges.

The record of what Lombardo paid for the Products is, at best, inconclusive.  But paying premium rates is vital to her FDUTPA claim because *actual* loss is a predicate to recovery under FDUTPA.  *See* Fla. Stat. § 501.211(2) (authorizing recovery for "actual damages"); *Maroone Chevrolet, Inc. v. Nordstrom,* 587 So. 2d 514, 518–19 (Fla. 4th DCA 1991) ("In view of the lack of evidence supporting a loss to appellee . . . she cannot recover under the deceptive and unfair trade practices claim.").  Lombardo could not have suffered a loss had she paid the same or less money for a higher SPF product.

### iii. *Causation*

Even if Lombardo could show that she paid a higher price for the higher SPF product, she still fails to demonstrate causation under FDUTPA.  A consumer claim under FDUTPA must have three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *See Virgilio,* 680 F.3d

at 1338 n.25. As the Eleventh Circuit has noted, to prove the causation element of a FDUTPA claim, "a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011). Still, causation is a necessary element of the FDUTPA claim, and "causation must be direct, rather than remote or speculative." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (King, J.); *see also* Fla. Stat. § 501.211(2) (A "person who has suffered a loss *as a result of* a violation of this part . . . may recover actual damages.") (emphasis added).

Defendants' allegedly deceptive pricing practices are too remote and speculative to satisfy the causation element. Defendants themselves do not set the retail prices of the Products; rather, they make price suggestions to retailers, who ultimately set the prices. (*See* Guggenhiem Dep. 18:7–23, ECF No. 102–5, Ex. E.) Therefore, Lombardo's damages—if any—were not directly caused by Defendants' conduct. Nor does Lombardo establish evidence of indirect causation, for example, by showing that Walmart's prices correlate to Defendants' suggested retail prices. At the time of Lombardo's purchase, Walmart, on its own term and for its own sales reasons, may have offered regular or promotional pricing within the price ranges listed above.

### 4. Conclusion

After reviewing the record, the motions and legal arguments, and the legal precedent, the Court finds that there are no genuine issues of material fact. Defendants provide undisputed evidence that Plaintiff purchased the Products within the preemption period delineated in the Court's December 2013 Order. Defendants also provide evidence that Plaintiff did not suffer actual damages and that Defendants did not engage in deceptive conduct that that could have directly injured Plaintiff. Plaintiff fails to produce sufficient evidence to rebut Defendants' factual proffer in such a way as to raise a genuine issue of material fact. Accordingly, the Court **grants** the Motion for Summary Judgment. (ECF No. 83.)

**Done and ordered** in chambers, at Miami, Florida, on August 12, 2015.

Robert N. Scola, Jr.
United States District Judge